IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 18, 2001

## WILLIAM RONALD JORDAN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Giles County**
**No. 7706     Jim T. Hamilton, Judge**

_____

**No. M1999-01360-CCA-R3-PC - Filed May 2, 2001**

_____

The petitioner, William Ronald Jordan, was convicted by a jury in the Giles County Circuit Court of driving under the influence of an intoxicant ("DUI") and attempted robbery. The trial court sentenced Petitioner as a multiple Range II offender to six years for the attempted robbery conviction and to eleven months and twenty-nine days for the DUI conviction, with the sentences to be served concurrently. This court affirmed Petitioner's convictions on direct appeal, and Petitioner subsequently filed a pro se petition, with two amendments, for post-conviction relief alleging ineffective assistance of counsel. The post-conviction court denied Petitioner relief. In this appeal, Petitioner asserts that he received ineffective assistance of counsel on the following grounds: (1) counsel failed to submit adequate evidence at the hearing on his motion to dismiss based upon denial of his right to a speedy trial; (2) counsel's advice to Petitioner not to testify at trial deprived him of a jury instruction on renunciation as a defense; and (3) counsel failed to object when the State filed an untimely motion for enhanced punishment under Tenn. R. Crim. P. 12.3. After a review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee (on appeal); and William Bright, District Public Defender, Pulaski, Tennessee, (at trial) for the appellant, William Ronald Jordan.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Mike Bottoms, District Attorney General; and Richard Dunavant, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

1

## I. Background

The facts leading to the underlying conviction are taken from the post-conviction hearing record and a review of this Court's opinion in the direct appeal. See State v. William Ronald Jordan, No. 01C01-9703-CC-00100, 1998 WL 270297, Giles County (Tenn. Crim. App., Nashville, May 28, 1998), no perm. to app. filed. On May 23, 1994, Petitioner entered the Bank of Frankewing to inquire about a loan. Petitioner met with Billy Kennedy, a loan officer, who assisted him in filling out a loan application. Petitioner smelled of alcohol. When the meeting concluded, Petitioner went to a teller window and gave the teller, Sue Coggins, a folded-up note. The note stated that Petitioner wanted money and would kill her if she did not cooperate. When Coggins told Petitioner that she did not "have any," Petitioner took the note and walked out of the bank. Coggins also smelled alcohol on Petitioner. When Kennedy learned from Coggins that Petitioner had given her a "holdup note," he wrote down the license plate number and the make of Petitioner's car and then telephoned the police. Deputy Kyle Helton of the Giles County Sheriff's Department apprehended Petitioner approximately forty-five minutes later. Helton noticed a strong odor of alcohol on Petitioner's breath and observed that Petitioner was unsteady on his feet. Petitioner was arrested. Shortly thereafter, he registered 0.22 on an intoximeter test.

Special Agent Robert Childs of the FBI and Investigator Michael Chapman of the Giles County Sheriff's Department interviewed Petitioner the next day, on May 24, 1994. Petitioner told them that he had spent the previous day drinking whiskey at a rock quarry with the quarry's owner, Steve Houston, and could not recall the events of that day clearly since he was "wild on booze" at the time. Although Petitioner recalled applying for a loan sometime during the afternoon, he claimed to have no recollection of the attempted robbery or of writing the robbery note.

Petitioner gave Agent Childs a second statement on June 2, 1994. In marked contrast to his previous statement, Petitioner then claimed to recall the events of May 23, 1994. Petitioner told Childs that he and Houston had been drinking together that day. At some point, Petitioner told Houston that he had previously spent time in jail for robbing a bank in Nashville, but Houston did not believe him. Petitioner then wrote a note similar to the one he had used to rob the bank and showed it to him. Afterward, Petitioner placed the note in his pocket. Later that day, a man and woman who were also at the quarry went with Petitioner to the bank. Petitioner did not recall their names, but testified that the man drove Petitioner's car and the woman followed them in another vehicle because they had somewhere else to go afterward. When they arrived at the bank, the couple left Petitioner with his car. Petitioner went inside. When he concluded his loan business, Petitioner approached one of the tellers to obtain a roll of quarters, but he mistakenly gave the teller the "holdup" note instead of the ten-dollar bill which was located in the same pocket. Defendant claimed that when he realized what he had done, he snatched the note away from the teller and left the bank.

Indictments against Petitioner for driving under the influence of an intoxicant and attempted robbery were filed on August 1, 1994. Petitioner filed a pro se motion for speedy trial on October 10, 1994, and a pro se motion to dismiss based upon the deprivation of his right to a speedy trial on

March 13, 1995. Petitioner was appointed counsel shortly before his arraignment in June 1995. Following a hearing on July 24, 1995, his motion to dismiss was denied.

Petitioner's trial was held on August 8, 1995, during which Agent Childs testified that he had been unable to locate "Steve Houston." However, Childs located the owner of the rock quarry, a man named Houston Lewis Smith. Smith testified at trial that he did not have any discussion with Petitioner regarding a robbery in Nashville and that Petitioner never showed Smith a robbery note. Smith did see Petitioner on May 23, the day of the robbery, as well as the two previous days. Smith also confirmed that, on the day of the robbery, Petitioner was drinking at the quarry. Petitioner left for approximately twenty to thirty minutes that afternoon. After he returned, Smith heard that a bank had been robbed by a man driving a car similar to Petitioner's. Smith then called the police.

Petitioner did not testify during his trial. At the conclusion of proof, the trial court denied Petitioner's request to instruct the jury on the defense of renunciation as to the attempted robbery charge because it considered renunciation "inapplicable." Thereafter, the jury returned guilty verdicts against Petitioner for both DUI and attempted robbery.

On appeal, Petitioner claimed that he was denied a speedy trial and that the trial court erroneously failed to instruct the jury on the affirmative defense of renunciation. See State v. William Ronald Jordan, 1998 WL 270297 at *1. Concerning the latter issue, this Court held that the proof presented by Petitioner "fairly raised" the affirmative defense of renunciation and that the trial court erred when it refused to instruct the jury on same. However, this Court also found that "no rational jury could conclude by a preponderance of the evidence that [Petitioner] renounced his crime." Furthermore, because the trial court's failure to instruct on renunciation did not affirmatively appear to affect the result of the trial, the failure was deemed "harmless error beyond a reasonable doubt." Id. at *4.

As for Petitioner's issue concerning a speedy trial, this Court noted that a delay of one year marks the point at which a delay is "presumptively prejudicial," i.e., unreasonable enough to trigger further inquiry. Id. at *5 (citations omitted). Consequently, the balancing test set forth in Barker v. Wingo, 407 U.S. 524 (1972) (adopted by the Tennessee Supreme Court in State v. Bishop, 493 S.W.2d 81 (Tenn. 1973)), was applied to determine the merits of Petitioner's speedy trial issue. Our Court assigned the most significant weight to the factor which required a showing of prejudice, finding that Petitioner suffered no prejudice based on the following facts: (1) Petitioner was incarcerated for another conviction prior to his trial: (2) his allegations of administrative deprivations were unproven; (3) Petitioner presented no proof as to what the alleged exculpatory witness who died during the delay would have testified to; and (4) even if the case was not delayed, in all likelihood the witness would have died prior to trial. Thereafter, Petitioner filed a pro se petition for post-conviction relief wherein he alleged, among other things, ineffective assistance of counsel for myriad reasons.

## II. Post-conviction Hearing

3

The post-conviction hearing occurred on June 29, 1999. Petitioner's proof consisted solely of his testimony. The State's proof consisted only of the testimony of the attorney who represented Petitioner during trial.

At the post-conviction hearing, Petitioner testified that a man named Jack Farrar drove him to the Bank of Frankewing on May 23, 1994, the day of the attempted robbery. Farrar was present at the rock quarry earlier that day while Petitioner was drinking and shooting pool with Houston Smith, the quarry's owner. Petitioner reiterated that he and Smith had a conversation concerning Petitioner's recent whereabouts, after which Petitioner replied that he had "been doing time for a bank robbery in Nashville" and then "wrote out a note showing him exactly how [he] robbed that bank." As stated above, Smith denied in his testimony at trial that Petitioner told him about any robbery or ever showed him a robbery note.

Petitioner further testified that after May 23, 1994, he was incarcerated at South Central Correctional Facility on charges unrelated to the bank incident and in June 1995, he was appointed counsel. Prior to the July 24, 1995 hearing on Petitioner's motion to dismiss, Petitioner informed Counsel that one of his witnesses was rendered unavailable because he had died in December 1994. Petitioner was referring to Jack Farrar, the man who allegedly drove him to and from the bank on the day of the incident. Petitioner claimed that if Farrar had been alive to testify at trial, he would have corroborated Petitioner's story that he went to the bank to obtain a loan and never mentioned a plan to rob the bank. Farrar also would have testified that Petitioner told him of the incident with the teller as they left the bank and Farrar's testimony could have been used to undermine the credibility of Smith, whose testimony was damaging at trial.

During the post-conviction hearing, Petitioner admitted that he and his counsel met a sufficient number of times so that Petitioner felt they "were ready to proceed" with his trial. They based their trial strategy on renunciation as a defense until "the day of trial," when "Judge Cain denied [Petitioner] the right to use renunciation . . . ." Petitioner also claimed that he would have testified if a renunciation defense had been available. Counsel told Petitioner that the decision whether or not to testify at trial was his, but Counsel wanted Petitioner to testify that he was too intoxicated to recall what happened at the bank. Because this was not true, Petitioner refused. Counsel then suggested that he not testify at all and Petitioner followed his advice.

Petitioner also claimed that his two statements to Agent Childs were not "inconsistent" as argued by the State. Instead, his first statement, wherein he claimed not to recall the incident, was merely his way of "stopping" the interview. The second statement was simply a continuation of the first, given at a later time in order to "finish telling them everything that happened."

Counsel for Petitioner testified at the post-conviction hearing that he first met Petitioner at one of Petitioner's court appearances. When they discussed the upcoming hearing on Petitioner's motion to dismiss, Petitioner wanted counsel to argue deprivation of his right to a speedy trial, drawing attention to the fact that a witness had died during the delay. But, from what Counsel had been able to glean from Petitioner's description of the dead witness' testimony, he would have

4

testified only that Petitioner was drunk, had previously robbed a bank, and had written the "holdup note." Because Counsel was "uncomfortable with the proof on that issue," he subsequently searched for alternative legal arguments to present and at the pre-trial hearing on Petitioner's motion to dismiss, he argued that Petitioner was denied prison privileges.

Counsel admitted that he did not present the matter of the dead witness at the hearing on Petitioner's motion to dismiss. Counsel stated that his decision to keep public discussion of Petitioner's previous bank robbery conviction to a minimum was a matter of strategy, and this included arguments at pre-trial hearings. Counsel advised Petitioner that a defense which relied on his previous bank robbery conviction was, in his opinion, unwise. Since Petitioner agreed with him, Counsel did not argue that the dead witness would have testified about Petitioner's bank robbery note or previous conviction.

Counsel testified that he spent a total of approximately thirty to forty pre-trial hours working on Petitioner's case. Counsel informed Petitioner of his legal right to testify and that, ultimately, whether or not he testified was his decision. Counsel reminded Petitioner that his basic defense strategy relied upon renunciation and Petitioner's state of intoxication. Since Petitioner could add no facts to those already presented, Petitioner's testimony was unnecessary. Moreover, if Petitioner testified, evidence of his prior convictions other than that for bank robbery might be admissible, i.e., his prior conviction for tax evasion and possibly others. Petitioner's demeanor during his testimony presented another potential pitfall–it was impossible to predict whether a jury would consider him a credible witness or not. In sum, Counsel cautioned Petitioner that his testimony would probably include a rehashing of the bank robbery conviction and impeachment by other convictions, all of which could seriously damage Petitioner's case. After discussing the matter at length with Counsel, Petitioner decided not to testify.

Counsel testified that he never insisted on a defense which ran contrary to Petitioner's wishes and that he did not file a motion to suppress Petitioner's statements to police because he "had an ethical duty as an attorney to the Court not to file a motion . . . [where] a good basis or a good reason to file it [did not exist]." During cross-examination, Counsel testified that Petitioner's testimony contained no new facts to support Petitioner's renunciation defense and that, in his opinion, any possible advantage gained by Petitioner's testimony was substantially outweighed by the danger of impeachment.

Petitioner presently appeals the dismissal of his post-conviction petition by the Giles County Circuit Court, asserting claims of ineffective assistance of counsel regarding the following issues: (1) counsel failed to submit adequate evidence at the hearing on his motion to dismiss based upon denial of his right to a speedy trial; (2) counsel's advice to Petitioner not to testify at trial deprived him of a jury instruction on renunciation as a defense; and (3) counsel failed to object when the State filed an untimely motion for enhanced punishment under Tenn. R. Crim. P. 12.3. For the reasons following, we affirm the post-conviction court's denial of relief.

### III. Analysis

In State v. Burns our supreme court held that a claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact and, thus, is subject to a de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn.1999); see Jehiel Fields v. State, ___ S.W.3d ___ , No. E1999-00915-SC-R11-PC, 2000 WL 166381 (Tenn. February 20, 2001). The de novo review of a trial court's factual findings by an appellate court are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact. Fields, ___ S.W.3d at ___; see also Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). By contrast, when reviewing the trial court's application of law to its factual findings "to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts conduct a purely de novo review, according to the trial court's conclusions of law no deference or presumption of correctness." Fields, ___ S.W.3d at ___.

A defendant alleging ineffective assistance of counsel must prove the allegations of fact underlying his claim by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Fields, ___ S.W.3d at ___. This standard of proof is required regardless of whether a petitioner is bringing the claim in a direct appeal or a post-conviction petition. See Burns, 6 S.W.3d at 461 n.5.

To determine whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim that his counsel was ineffective, a petitioner bears the burden of proving two elements. First, he must prove his counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). This element is proved by showing that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Second, the petitioner must prove that he was prejudiced by his counsel's unprofessional errors, such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990). Petitioner's failure to prove either element, deficient performance *or* prejudice, requires dismissal of his petition. See Strickland, 466 U.S. at 697.

When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

In this appeal, Petitioner asserted that his trial attorney rendered ineffective assistance of counsel in three specific areas. First, Petitioner argues that his trial attorney was ineffective because he failed to submit "adequate evidence" at the hearing on his motion to dismiss due to the denial of his right to a speedy trial. Specifically, Petitioner alleges that his trial attorney failed to present evidence that the deceased witness would have testified that he (1) rode with Petitioner to the bank, (2) had knowledge that Petitioner's purpose in going to the bank was to obtain a loan, (3) drove Petitioner back to the rock quarry after Petitioner left the bank and (4) was told Petitioner's version

6

of the events that transpired at the bank. Petitioner further asserts that his trial attorney should have presented a newspaper notice of the witness's death which he had in his possession at the hearing on his motion to dismiss. Even if we were to assume that Petitioner's attorney was deficient for failing to present crucial evidence at the motion to dismiss, Petitioner has failed to prove by clear and convincing evidence that he was prejudiced by any deficiency. See Tenn. Code Ann. § 40-30-210(f) (1997). The record reveals that Defendant was indicted on August 1, 1994. The witness died four months later, in December 1994, and Petitioner submitted no proof at the post-conviction hearing that the trial could or would have been held prior to the witness's death.

Secondly, Petitioner argues that his trial attorney rendered ineffective assistance of counsel when he advised Petitioner not to testify at trial; Petitioner asserts that his testimony would have resulted in a "reasonable probability" that the trial court would have granted Petitioner's request to give the jury an instruction on renunciation as a defense. In the direct appeal from Petitioner's conviction, our Court held that the trial court erred by not charging renunciation based upon the proof actually presented at trial. However, our Court further held that the error was harmless. Even if we assume, arguendo, that the trial attorney rendered ineffective assistance of counsel in this matter, Petitioner has again failed to prove prejudice. Petitioner's testimony at the post-conviction hearing concerning the substance of his proposed testimony essentially mirrored his second statement to the police. Since this statement was introduced during the State's case-in-chief, the evidence in issue was effectively presented to the jury.

Lastly, Petitioner asserts that his trial attorney rendered ineffective assistance of counsel because he did not object to the State's late-filed notice of intent to seek enhanced punishment within Range II. It is undisputed that the notice was filed one day late. However, under Tenn. R. Crim. P. 12.3, the remedy for untimely filing, where an objection is properly made, is typically a continuance. Yet again, Petitioner has failed to show prejudice resulting from any alleged deficiency in the representation by his trial attorney.

In sum, because Petitioner has failed to prove by clear and convincing evidence that he suffered prejudice from any of the alleged deficiencies in his trial attorney's performance, he is not entitled to relief on the issues presented in this appeal.

## IV. Conclusion

The judgment of the trial court dismissing the petition for post-conviction relief is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE

7