# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 6, 2001 Session

## ERIC WALLACE v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Shelby County
### No. P-20457    W. Otis Higgs, Judge

### No. W2000-02854-CCA-R3-CD  - Filed February 19, 2002

The petitioner, Eric Wallace, appeals the trial court's denial of his petition for post-conviction relief. The issues presented for review are (1) whether the petitioner received effective assistance of counsel; (2) whether the petitioner was denied the right to a speedy trial; and (3) whether the state used improper impeachment evidence.[1] Because the evidence does not preponderate against the findings of the trial court, the order denying post-conviction relief is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Eric Wallace.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On July 10, 1992, the petitioner and his brother, Percy Wallace, were walking along Woodlawn Street in Memphis when they encountered Jimmy Weddle, who was sitting on his front porch. The Wallaces asked Weddle if he knew anyone that wanted to purchase drugs. Weddle promised to send a couple, who he knew was interested in obtaining drugs, to the Wallaces. When the Wallaces reached the intersection of Woodlawn and Looney, they saw "Boo Boo" Fox, who was driving through the neighborhood. Fox stopped his car as Weddle walked to the intersection. Fox

---

[1]The petitioner noted the existence of additional issues for review, but failed to enumerate them in his brief. The reply brief indicated that the issues were included in an exhibit; however, no attachment is in the record. Because the petitioner did not identify any of these issues, made no citations to the record, and failed to present argument or reference any authority for his position, waiver applies. See generally State v. Aucoin, 756 S.W.2d 705 (Tenn. Crim. App. 1988).

asked the Wallaces for a $20 rock of crack cocaine but gave them only $15. When the Wallaces informed Fox that he had not given them enough money, Fox answered that he would go to his car for more money. When Fox reached inside his vehicle, he grabbed a pistol and robbed the Wallaces of their money and drugs. Fox fired several shots at the Wallaces as Weddle returned to his residence.

Believing that Weddle had orchestrated the robbery, the Wallaces ran to their residence, obtained two loaded shotguns, and returned to the Weddle residence. Percy Wallace called Weddle "a dead man," fired several shots at the residence, and instructed the petitioner to remain outside and shoot anyone who attempted to leave.

When the shooting began, Venita Swift, who was celebrating her birthday at the Weddle residence, attempted to escape to her own home located across the street. As she ran, the petitioner shouted, "Hold bitch." Ms. Swift, who placed her hands in the air, continued to run. The petitioner then shot her one time in the back. She died several minutes later.

At the conclusion of his trial on March 31, 1996, the petitioner was convicted of the first degree felony murder of Venita Swift and the attempted first degree murder of Jim Weddle. The trial court imposed a life sentence for the murder conviction and a sentence of fifteen years for the attempted murder conviction. The sentences were ordered to be served consecutively. The petitioner appealed his convictions, alleging that the evidence was insufficient and contending that the trial court abused its discretion by ordering the sentences to be served consecutively. This court affirmed. State v. Eric Wallace, No. 02-C-01-9604-CR-00125 (Tenn. Crim. App., at Jackson, July 28, 1997). Permission to appeal to our supreme court was denied on April 6, 1998. Later, the petitioner filed a petition for post-conviction relief, raising a plethora of issues. The trial court appointed counsel and ordered the filing of an amended petition. After an evidentiary hearing, the trial court denied relief.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn .Crim. App. 1978).

**I**

The petitioner first asserts that he was denied the effective assistance of counsel at trial and on direct appeal. He has attacked the effectiveness of his counsel in several ways, which this court will address one issue at a time.

Several well-developed guidelines apply to our review. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys

in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Initially, Attorneys Carolyn Watkins and Ed Thompson, both of the Shelby County Public Defender's office, represented the petitioner. When the state chose not to seek the death penalty, Attorney Thompson discontinued his representation. Attorney Watkins represented the petitioner until she left the public defender's office several months before his trial. Watkins was replaced by Attorney Betty Thomas, also of the public defender's office. Attorney Thomas represented the petitioner throughout his trial. Attorney Mark Ward became the petitioner's attorney shortly after the trial and continued his representation through the supreme court's denial of permission to appeal.

The petitioner asserts that Attorneys Watkins and Thomas were ineffective because they failed to properly investigate. At the evidentiary hearing the petitioner claimed that Attorney Watkins failed to interview Yvette Stewart, Dominique Beal, Margaret Dowell and Linda Wallace, all of whom he identified as potential witnesses. According to the petitioner, Stewart would have testified that the petitioner asserted his right to counsel prior to being questioned by police and giving his confession. The petitioner claimed that Dominique Beal would have confirmed that a third party actually fired the shot that killed Venita Swift. Finally, the defendant contended that Dowell and Wallace, his sisters, would have provided testimony favorable to the defense.

At the evidentiary hearing, Attorney Watkins testified at the hearing that both she and Ralph Nally, an investigator with the Shelby County Public Defender's office, attempted to interview the witnesses. She recalled that some potential witnesses who lived in the neighborhood where the murder occurred were reluctant to cooperate. She described others as hostile. Attorney Watkins testified that she spoke with Linda Wallace and Margaret Dowell and determined that neither had any relevant information about the crimes. Nally testified that he did, in fact, locate and interview Yvette Stewart, who was subpoenaed as a witness and was present at a pre-trial suppression hearing. Nally contended that the information provided by the petitioner as to names and addresses of other

witnesses was largely incorrect or incomplete. Attorney Thomas testified that she spoke with several witnesses, including Yvette Stewart. She described the information she received as unhelpful.

The petitioner also testified that neither Attorney Watkins nor Attorney Thomas visited the crime scene or arranged for independent ballistics tests of the gun or shotgun pellets, thereby rendering their assistance ineffective. Attorney Watkins countered that both she and Nally visited the crime scene during their investigation. She testified that she did not believe ballistics tests would be helpful because the defendant, who admitted shooting the victim, claimed it was accidental. Attorney Thomas confirmed that the defense theory was that the shooting of the victim was an accident. Attorney Thomas stated that she was surprised when the defendant ultimately testified at trial that a third person shot the victim.

At the conclusion of the hearing, the trial court accredited the account provided by defense counsel and determined that the failure to procure ballistics tests under those circumstances was reasonable. The trial court also found that both Attorney Watkins and Attorney Thomas conducted an adequate investigation of the case.

In our view, the evidence does not preponderate against those findings. The petitioner has failed to show that Attorney Watkins and Attorney Thomas were deficient for their failure to adequately interview witnesses or their failure to arrange ballistics testing. Certainly, he was unable to establish how more extensive interviews would have assisted his defense and has been unable to indicate how he was prejudiced by the failure of his attorneys to seek ballistics testing.

Additionally, the petitioner argues that Attorney Watkins was ineffective because she failed to file a motion for speedy trial. The petitioner testified that he asked Attorney Watkins to file a motion for speedy trial shortly after his arrest. When she failed to do so, the petitioner filed a pro se motion for speedy trial in March of 1993. The motion was heard and denied by the trial court in February of 1994. The record contains no explanation as to the delay in the hearing of the motion.

Attorney Watkins testified that, at the time of this proceeding, the petitioner had a different, unrelated murder case pending in another division of the Shelby County Criminal Court. She stated that she did not file a motion for speedy trial because she wanted to insure that each case proceeded at the same speed. It was her primary strategy that the one case not be used in the trial of the other as an aggravating circumstance. The trial court made no findings of fact regarding this issue.

Although the trial court should have specifically addressed this question, it is our view that a strategy that aimed to prevent the disposition of one of the cases from causing a disadvantage in the other would qualify as sound. More importantly, the petitioner has failed to show that he was prejudiced by counsel's decision not to seek an expedited trial. As more thoroughly discussed in the remaining portion of this opinion, the petitioner was unable to establish that the delay led to the loss of evidence, disappearance of witnesses, or failure of memories.

The petitioner also argues that Attorney Thomas was ineffective because she failed to adequately review the materials provided to her by Attorney Watkins, failed to competently argue his motion to suppress, failed to object to an amendment of the indictment, failed to effectively contest the state's theory of transferred intent, and failed to adequately prepare jury instructions. The petitioner also claims that Attorney Thomas was prejudiced against him because her brother was killed in a gang-related homicide.

Attorney Thomas testified that she did, in fact, review all materials given to her by Attorney Watkins. She also stated that she lodged an objection to the amendment of the indictment one week before trial and tried to block a jury instruction on transferred intent. The trial court overruled both of her objections. Attorney Thomas contended that her brother's death did not interfere in any way with her representation of the petitioner.

The trial court accredited the account provided by defense counsel and concluded that the petitioner had failed to present any evidence to substantiate his claims. In our view, the evidence does not preponderate against the finding that the petitioner received the effective assistance of counsel at trial.

The petitioner asserts that his appellate counsel, Mark Ward, was also ineffective. He contends that Attorney Ward failed to maintain adequate communications during the course of the appeal. Attorney Ward refuted the claim, insisting that he spoke with the petitioner and communicated by several letters during the pendency of the appeal. Attorney Ward also produced the correspondence between he and the petitioner. All of the letters, which were significant in number, made reference to the issues to be presented on appeal.

The trial court found that the petitioner failed to demonstrate that he was prejudiced by any limitations in the communications he had with his appellate counsel and concluded that the proof did not support the claim of a failure of communication. In our view, the record supports the determination that there was adequate communication between the petitioner and his counsel throughout the appellate process.

The petitioner also claims that Attorney Ward was ineffective for failing to present various issues on direct appeal. Attorney Ward, however, testified that he thoroughly reviewed the materials from the petitioner's trial and chose to present only the strongest issues. In his opinion, the other issues the petitioner asked to raise lacked merit. Generally, the determination of the issues to present on appeal addresses itself to the professional judgment and sound discretion of appellate counsel. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). The trial court accredited the testimony of appellate counsel, finding neither deficiency in his performance nor prejudice in the record. The petitioner has failed to show that any omitted grounds would have merited relief if timely presented on direct appeal. Thus, the petitioner is not entitled to relief.

## II

The petitioner next argues that he was denied the right to a speedy trial in violation of the Sixth Amendment of the United States Constitution and Article 1, § 9 of the Tennessee Constitution. The defendant, as indicated, failed to raise this issue on direct appeal. Tennessee Code Annotated § 40-30-206 governs the concept of waiver:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-206(g). Because the claim of a speedy trial violation was available on direct appeal, technically speaking, the issue has been waived. More importantly, had the issue been presented on direct appeal, the petitioner would not have been entitled to relief.

The right to a speedy trial is, of course, constitutionally based. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Rule 48 of the Tennessee Rules of Criminal Procedure provides as follows:

> If there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, presentment, information or complaint.

Tenn. R. Crim. P. 48(b); see also Tenn. Code Ann. § 40-14-101.

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court adopted a four-factor analysis for determining whether one has been denied his entitlement to a speedy trial. Adopting a test first established in Barker v. Wingo, 407 U.S. 514 (1972), our high court created a balancing test based upon the following factors:

> (1) the length of the delay;
> (2) the reason for the delay;
> (3) whether the defendant asserted a claim to his right; and
> (4) whether the defendant was prejudiced by the delay.

Bishop, 493 S.W.2d at 84. The length of the delay is a triggering mechanism. Until there is some delay which is presumptively prejudicial, characterized in some federal and state cases as being from one to two years, there is no necessity for inquiry into the other factors. Barker, 407 U.S. at 530. Prejudice, the most important of the considerations, is assessed in light of three interests to the

defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Id. at 532. "Serious crimes are . . . expected to take longer than 'ordinary street crime [s].'" State v. Thomas, 818 S.W.2d 350, 362 (Tenn. Crim. App. 1991) (quoting Barker, 407 U.S. at 531) (alteration in original). Some courts have held that "a two-year delay is not inordinately long." Id. at 363. Other courts, however, have found that a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992). Because there was a twenty-seven-month delay from the petitioner's arrest until his trial, this court must consider the other factors.

The second Barker factor, the reason for the delay, generally falls into four categories: (1) intentional delay by the state to gain a tactical advantage or harass the defendant; (2) negligence; (3) delay necessary to effectively prosecute the case; and (4) delay caused by or acquiesced in by the defendant. State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996). Intentional delay to gain undue advantage or harass the defendant weighs heavily against the state, while delay through the state's negligence is given slighter weight. The third type of delay, that which is necessary to prosecute the case, does not weigh in favor of or against either party, while delay caused by the defendant weighs against the defendant. Id. Here, the reasons for the delay are unclear from the record. There is little which suggests the state was responsible for the delay. In fact, Attorney Watkins testified that the delay was necessary because the petitioner had two murder cases pending at the same time. She stated that she wanted both charges to proceed at the same pace so that the petitioner would not have the disadvantage of a prior conviction at the time of his trial. Because this court has accepted that position as a sound strategy, this factor weighs favorably for the state.

The third factor is the defendant's assertion of his speedy trial right. Of course, the defendant is under no duty to bring himself to trial. In consequence, the absence of a demand for a speedy trial does not amount to a waiver of the issue. Bishop, 493 S.W.2d at 84. Nonetheless, the timeliness of the demand is a factor to be considered when determining whether the defendant has been denied his right to a speedy trial. Id. Here, the defendant filed a pro se motion for speedy trial in March of 1993, three months after his indictment. The trial was two years later. In consequence, this factor weighs in favor of the petitioner.

Finally, this court must consider what prejudice, if any, the petitioner suffered because of the delay. The petitioner was indicted on December 15, 1992, and tried on March 28, 1995, a delay of some twenty-seven months. The record contains no more than the bare accusations of the petitioner that evidence has been lost, witnesses have disappeared, or memories faded. The petitioner has offered no proof to show he suffered any disadvantage in the presentation of his defense. Without condoning the lengthy period of pretrial incarceration, it is our view that the prejudice factor weighs favorably for the state. Overall, the Barker factors weigh favorably for the state. Thus, the issue is without merit.

**III**

Lastly, the petitioner claims that the prosecution introduced as impeachment evidence his pending murder case in violation of his Fifth Amendment rights and in contravention of Tennessee Rule of Evidence 404(b). He has not explained why the evidence was admitted or cited any authority in support of his claim. Because this issue was available on direct appeal, but not presented, the issue may be treated as waived. <u>See</u> Tenn. Code Ann. § 40-30-206(g). Further, the record is inadequate for a review on the merits. The record contains nothing from which this court could glean the circumstances under which evidence of the petitioner's pending murder case was admitted. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). Failure to prepare an adequate record for review results in the waiver of that issue. <u>Thompson v. State</u>, 868 S.W.2d 156, 172 (Tenn. Crim. App. 1993).

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE