IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2003 Session

## STATE OF TENNESSEE v. FRED ELLIOT HUNTER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-A-562     Seth Norman, Judge**

_____

**No. M2002-02128-CCA-R3-CD - Filed December 8, 2003**

_____

The appellant, Fred Elliot Hunter, was convicted by a jury of conspiracy to possess with the intent to deliver three hundred (300) grams or more of a substance containing cocaine, a Class A felony. The appellant was sentenced to twenty-one (21) years as a Range I Standard Offender and fined $2,000. The trial court denied the appellant's motion for new trial, and he appeals, arguing: (1) that the trial court erred in failing to grant the appellant's motion for judgment of acquittal; (2) that the trial court erred in failing to grant the appellant's motion to dismiss for want of a speedy trial; (3) that the evidence was insufficient to sustain the conviction; (4) that the trial court erred in admitting the appellant's manslaughter conviction; (5) that the trial court erred in failing to consider appropriate mitigating factors in sentencing; and (6) that the trial court failed to order alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Tony L. Maples, Murfreesboro, Tennessee, for the appellant, Fred Elliot Hunter.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

At the time the offense occurred, Al Watson, a detective with the Lavergne Police Department, performed reverse drug operations on a routine basis. As part of each reverse drug

operation, Detective Watson employed a "source"[1] to identify people interested in buying drugs. Once the source identified the interested party and gave them Detective Watson's contact information, Detective Watson attempted to set up a deal in which the interested party purchased drugs from him or another officer. The sources used by the Lavergne Police Department were instructed not to carry weapons, possess or use drugs, coerce people, or become involved in criminal activity. Sources were generally paid a percentage based upon the quantity of drugs purchased in any deal that was consummated as a result of the information they provided to the Lavergne Police Department.

In September of 1999 Detective Watson was contacted by one of his sources with information about a person who might be interested in purchasing some cocaine. Detective Watson had never used this particular source as an informant. The source told Detective Watson that the potential buyer's name was "Freddie" and that he worked at a body shop on Trinity Lane. Detective Watson instructed the source to give "Freddie" his phone number.

Sometime soon thereafter, the source approached the appellant at his place of employment, Handy Man Body Shop, and informed him that if he was interested, he knew someone who had cocaine available for purchase. The source provided the appellant with Detective Watson's telephone number.

Detective Watson contacted the Metro Police Department to inform them of the potential drug transaction because the shop was located within Metro's jurisdiction. Metro agreed to work with Detective Watson. Metro Detective Gene Donegon informed Detective Watson that the owner of the shop, Jackie Riggsbee, was recently arrested for purchasing a large quantity of pain killers. Incident to the arrest, Metro also recovered a half kilogram of cocaine from Mr. Riggsbee's residence.

Detective Watson called the appellant at the shop. The appellant told Detective Watson that he did not like to talk on the phone, so the two arranged to meet at the shop in September of 1999. Detective Watson testified that he made arrangements to wear a "body wire" to the meeting. The wire was monitored by the Metro Police Department. The appellant "basically checked [Detective Watson] out" and alluded to the fact that his "boss" still had some cocaine left and did not need any at that time. Mr. Riggsbee was at the shop when Detective Watson met with the appellant.

Detective Watson and the appellant talked a few times on the phone during September and early October. Sometime in October, Detective Watson had surgery and was on leave from work. During this time, he was given a new cell phone and new phone number. Detective Watson did not provide the appellant with his new phone number until January of 2000, after the source informed Detective Watson that the appellant was looking for him. Detective Watson instructed the source

---

[1]Detective Watson defined a source as "someone who provides you with information." He distinguished a source from an "informant" because the informant is normally a person used to "make purchases."

to give the appellant the new phone number; he monitored the phone call between the source and the appellant.

The appellant called Detective Watson sometime in mid-January. Detective Watson testified that the appellant wanted a price quote for four or five kilograms of cocaine. The appellant testified that he thought he was to meet Detective Watson at four or five o'clock to purchase one kilogram of cocaine, not four to five kilograms of cocaine. Detective Watson told the appellant that he would call him back in twenty minutes with a price for the cocaine. Detective Watson informed the appellant that the cocaine would sell for about $20,000 a kilogram and that it would take a few days to pick up the drugs. Detective Watson testified that he delayed the transaction a few days in order to give the appellant a chance to back out of the deal. He called the appellant back later and raised the price of the cocaine to $20,500 a kilogram. The appellant agreed to the deal, casually mentioning his "boss man" during the conversation with Detective Watson, and the two planned to meet at the McDonald's Restaurant on Trinity Lane in Nashville on January 20, 2000.

Detective Watson met the appellant at the McDonald's Restaurant. He had five kilograms of cocaine in his trunk for the sale. Detective Watson showed the cocaine to the appellant and gave him a knife to test it. The appellant tested the cocaine and told Detective Watson that he had to go back to the shop to get the money. Detective Watson gave the appellant fifteen minutes to return with the money.

Detective Mike Clark with the Metro Police Department observed the appellant leaving the restaurant. He followed the appellant to the body shop and back to the restaurant. He noticed that two cars left the shop and headed back toward the restaurant. The second car, driven by Robert Richard Spurlock, Jr., parked at a gas station facing the restaurant.

The appellant returned within fifteen minutes with a box containing $20,500. Detective Watson told the appellant at that time that the deal was off because he was expecting to sell four to five kilograms to the appellant. The appellant told the Detective that he had to have the cocaine. At that time, Detective Watson received a call from the Metro Officers who were monitoring the deal. They instructed the detective to go ahead with the transaction as planned. Detective Watson agreed to sell the appellant one kilogram of cocaine. The two walked to the trunk of the vehicle where the Detective opened the trunk, and the appellant picked up the bag containing the cocaine. Detective Watson gave the arrest signal and officers moved in and arrested the appellant on the spot. The appellant's co-defendant, the driver of the second vehicle, was also arrested following the drug transaction.

The appellant was indicted by a Davidson County Grand Jury of conspiracy to possess with the intent to deliver three hundred (300) grams or more of a substance containing cocaine on July 17, 2000. A jury trial was held on December 3-5, 2001.

At the trial, the appellant testified that one of his long-time friends, Michael Dickson, first gave him Detective Watson's telephone number after offering to sell him stolen Corvettes and

VCRs. The appellant stated that Mr. Dickson first tried to persuade Mr. Riggsbee to purchase cocaine. The appellant admitted that he asked Mr. Riggsbee if he was interested in the possible cocaine purchase.

The appellant testified that he agreed to meet with Detective Watson only to "blow off" Mr. Dickson. At the meeting in September, he told Mr. Dickson that Mr. Riggsbee did not need any cocaine at that time. The appellant testified that Mr. Dickson repeatedly came to the shop. He also stated that it was never his intention to get involved in a drug transaction. However, he owed Mr. Riggsbee money for legal fees and testified that Mr. Riggsbee wanted him to be the middleman in the drug deal as a way of repaying him. The appellant stated that he became involved in the drug transaction to make Mr. Dickson happy and get Mr. Riggsbee off his back. The appellant also admitted that he used and tasted cocaine on several occasions in the past.

After hearing the testimony at trial, the jury returned a verdict of guilty on the charge of conspiracy to possess with the intent to deliver three hundred (300) grams or more of a substance containing cocaine. A sentencing hearing took place on May 8, 2002, and the trial court sentenced the appellant to twenty-one (21) years as a Range I Standard Offender and fined the appellant $2,000.

On appeal, the appellant argues that: (1) the trial court erred by failing to grant the motion for judgment of acquittal; (2) the trial court erred by failing to grant the motion to dismiss for lack of a speedy trial; (3) the evidence was insufficient to sustain the conviction; (4) the trial court erred by allowing the appellant's manslaughter conviction to be used for impeachment; and (5) the trial court failed to consider appropriate mitigating factors and failed to order alternative sentencing. The State argues that none of the appellant's claims merit relief. After reviewing the record, we affirm the judgment of the trial court.

Speedy Trial

The appellant first claims that the trial court erred by failing to grant his motion to dismiss for lack of a speedy trial. Specifically, the appellant notes that he was arrested in January of 2000 and the trial did not occur until December of 2001. He alleges that he was prejudiced as a result of the delay because one of his witnesses died, he was unable to meet with the Parole Board to obtain release on an unrelated charge, and he lost favorable sentencing alternatives. The State counters that there was no prejudice to the appellant because the reason for the delay resulted from the State's attempts to facilitate the effective prosecution of the case and because the appellant failed to demonstrate that he was deprived of his right to speedy trial. Thus, the State argues that the trial court's decision to deny the motion to dismiss should be affirmed.

The United States and Tennessee Constitutions guarantee the criminal defendant the right to a speedy trial. U.S. Const. amend VI; Tenn. Const. art. I, § 9; State v. Utley, 956 S.W.2d 489, 492

-4-

(Tenn. 1997). The right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101. In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial . . . ." Tenn. R. Crim. P. 48(b).

The Tennessee Supreme Court has stated that "formal grand jury action or the actual restraints of an arrest are required" to trigger speedy trial analysis. Utley, 956 S.W.2d at 493. This is because "it is at this stage of arrest and grand jury action that the significant interests served by the right to a speedy trial are most directly implicated: the protection against oppressive pre-trial incarceration and the reduction of anxiety and concern caused by unresolved charges." Id.

Under Utley it is clear that the appellant's right to a speedy trial was implicated at a minimum when the grand jury returned the indictment in July of 2000. However, formal proceedings against the appellant had begun in January of 2000 after his arrest, and the appellant's right to a speedy trial was triggered at that time. The trial began in December of 2001, a delay of approximately two years in bringing the defendant to trial.

When an accused seeks the dismissal of charges based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial." State v. Jefferson, 938 S.W.2d 1, 12 (Tenn. Crim. App. 1996) (citing Doggett v. United States, 505 U.S. 647, 651 (1992) ; Barker v. Wingo, 407 U.S. 514, 530 (1972)). The length of the delay is dependent upon the peculiar circumstances of each case, and the delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. Barker, 407 U.S. at 530-31. A delay of one year or longer marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. Doggett, 505 U.S. at 652 n.1; Utley, 956 S.W.2d at 494. If this threshold is crossed, a balancing test determines the merits of the speedy trial issue. In State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973), the Tennessee Supreme Court recognized and adopted the balancing test the United States Supreme Court set forth in Barker in which four factors must be balanced. The factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice resulting from the delay. Barker, 407 U.S. at 531; Bishop, 493 S.W.2d at 83-84.

This court also recognizes that findings of fact by the trial judge are presumed correct and may only be overcome by a preponderance of the evidence contrary to that finding. Tenn. R. App. P. 13(d). The Tennessee Supreme Court has held that "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the trial court level is entitled to the "strongest legitimate view of the evidence" as well as "all reasonable and legitimate inferences that may be drawn from that evidence." Id.

### (1) The Length of the Delay

As noted above, a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett, 505 U.S. at 652 n.1; see also Utley, 956 S.W.2d at 494. The delay in this case was over one year and, therefore, meets the threshold for consideration of the other factors. We find that this factor weighs in the appellant's favor.

### (2) The Reason for the Delay

Reasons for the delay of prosecution fall within four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in by the defense. State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996).

In this case, the appellant claims that the delay was "due to the prosecution's attempt to attain [sic] a tactical advantage by bettering their position to compel cooperation by a co-defendant" and "bureaucratic indifference." The State filed a motion to continue the case on March 9, 2001, because the co-defendant, Mr. Riggsbee, as part of a guilty plea, agreed to testify against the appellant. Mr. Riggsbee evidently falsely represented facts to the prosecutor and, as a result, a superseding indictment was filed on March 23, 2001, listing Mr. Riggsbee as a co-defendant. The State argues that their actions which contributed to the delay were based on their attempts to effectively prosecute the case. We agree. "The third type of delay is, by definition, justifiable and is not weighed against either party." Wood, 924 S.W.2d at 347.

### (3) The Accused Assertion of the Right to a Speedy Trial

The Tennessee and United States Supreme Court have both recognized that "an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right." Wood, 924 S .W.2d at 351 n.13 (Tenn. 1996) (citing Doggett, 505 U.S. at 652-54).

Both parties herein agree that the appellant asserted his right to a speedy trial. However, the appellant was aware of the charges and the indictment and did not file a motion to dismiss the indictment until August 10, 2001, some nineteen (19) months after his arrest and only four months prior to trial. The appellant claims on appeal that he asserted his right to a speedy trial "as early as July of the year 2000 when he filed a motion to dismiss the charges for failure of the State to proceed in a timely fashion." The technical record, however, does not include a motion to dismiss prior to that filed on August 10, 2001. We find that the appellant acquiesced in the delay by failing to assert his right to a speedy trial until some nineteen (19) months after the indictment was issued. This factor must weigh in favor of the State.

<u>(4) Prejudice</u>

The final factor to be reviewed in determining whether a defendant's right to a speedy trial has been violated is whether the defendant has been prejudiced due to the delay. <u>Wood</u>, 924 S.W.2d at 348; <u>Bishop</u>, 493 S.W.2d at 84. This final factor is also the most important of the four balancing factors. <u>Wood</u>, 924 S.W.2d at 348. In determining this remaining factor, we focus on (1) any undue and oppressive incarceration, (2) the anxiety accompanying a public accusation, and (3) any impairment of the defendant's ability to prepare his defense. <u>Bishop</u>, 493 S.W.2d at 85; <u>State v. Kolb</u>, 755 S.W.2d 472, 475 (Tenn. Crim. App. 1988). In applying the third of these considerations, the impairment of defense, the Tennessee Supreme Court and the United States Supreme Court have acknowledged:

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown . . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other <u>Barker</u> criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

<u>Wood</u>, 924 S.W.2d at 348 (citing <u>Doggett</u>, 505 U.S. at 655) (citations omitted).

In this case, the appellant contends that he was prejudiced by the delay because he was unable to adequately assist in his defense, lost favorable sentencing options, and was unable to meet with his parole officer. The appellant argues that he was the most qualified person to assist in his defense and because he was incarcerated, it was impossible for him to "remember the whereabouts of witnesses and to discuss the occurrence leading up to the events which gave rise to these charges." It is unclear from the appellant's argument how the appellant's ability to prepare a proper defense was prejudiced, merely due to his incarceration. Furthermore, it is unclear how the appellant was prejudiced by not being allowed to meet with his parole officer in a totally unrelated case. Even though the appellant argues that he could have received a sentence that "was at least partially concurrent to the one he was serving," it is unclear how the appellant lost favorable sentencing options. We conclude that the appellant herein has not demonstrated that he was prejudiced by the delay and that overall the <u>Barker</u> factors weigh in favor of the State. Thus, the trial court properly denied the motion to dismiss for lack of a speedy trial.

Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994);

State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with conspiracy to deliver over three hundred (300) grams of cocaine. The appellant challenges the sufficiency of the evidence on appeal. Specifically, the appellant argues that the evidence is insufficient to substantiate a finding of guilt because "the State failed to prove each and every element of the charged offenses" and thus failed to meet its burden. The State argues that based on the evidence a jury could reasonably conclude that the appellant committed the offense.

To convict the appellant of conspiracy to deliver cocaine, the State was required to prove that the appellant conspired to knowingly possess a controlled substance with intent to deliver the controlled substance. Tenn. Code Ann. § 39-17-417(a)(4). The offense of conspiracy is committed when "two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense." Tenn. Code Ann. § 39-12-103.

The proof introduced at trial, including the testimony of the appellant, established that the appellant owed Mr. Riggsbee money and agreed to be the middleman in the drug deal as a way of repaying him. During conversations with Detective Watson, the appellant referred to his "boss" or "boss man," which Detective Watson assumed to be Mr. Riggsbee, the owner of the shop. The appellant himself testified that he agreed to purchase a kilogram of cocaine from Detective Watson at the McDonald's restaurant, that after testing the cocaine he went to the shop to get the money and tell Mr. Riggsbee that the cocaine was "good" and that he took $20,500 back to the McDonald's

restaurant to give to Detective Watson in exchange for the cocaine. We conclude that there was sufficient evidence to support the conviction.[2]

## Admissibility of Manslaughter Conviction

During the trial and immediately prior to the appellant's testimony, counsel for the appellant made a motion to exclude evidence of the appellant's conviction for voluntary manslaughter on the basis of Rule 403 of the Tennessee Rules of Evidence because the prejudicial impact of the evidence outweighed the probative value. Initially, the trial court agreed to take the matter under advisement until cross-examination. On direct examination, counsel for the appellant asked the appellant whether he had "ever been convicted of a drug offense." The appellant answered that he had not. Prior to cross-examination, counsel for the State requested a jury-out hearing where he argued that counsel for the appellant had "opened the door" to evidence of the appellant's character and that as a result, he should be able to utilize evidence of the appellant's conviction for voluntary manslaughter to impeach the appellant's credibility. The trial judge determined at that time that the conviction was inadmissible based on Rule 403 of the Tennessee Rules of Evidence. Then, the following exchange took place between counsel for the State and the appellant during cross-examination:

> Counsel: No, no, no. Listen to my questions. I asked you, have you ever seen cocaine and you said, yes, on tv. And now you say yes, in real life I have?
> Appellant: Yes, sir, in real life I have.
> Counsel: Okay. But why did you tell me just a minute ago - - Why did you dodge the question by saying on tv?
> Appellant: My mind is spinning too fast.
> Counsel: Well, let's slow it down.
> Appellant: Okay.
> Counsel: What is making your mind spin so fast here today?
> Appellant: I don't know, I'm not used to this sir.
> Counsel: I'm sorry?
> Appellant: I'm not used to this.
> Counsel: Well, not used to what, sir?
> Appellant: Being in a courtroom and being examined?

---

[2]The appellant also argues that the trial court erred by failing to grant the motion for judgment of acquittal when the trial court allowed the appellant to raise the defense of entrapment and the State did not rebut any of the appellant's testimony. Specifically, the appellant claims that his own testimony shows that he was repeatedly contacted by the source to consummate the drug transaction, that he had no intentions of getting involved in a drug transaction, and that the State failed to rebut his testimony. The State contends that there was no evidence of entrapment because the appellant was predisposed to commit the crime and that the mere fact that Detective Watson furnished drugs to the appellant by means of a sale does not support the existence of entrapment as a matter of law. A motion for judgment of acquittal requires that the trial court determine the sufficiency of the evidence. Tenn. R. Crim. P. 29(a). For the same reasons we conclude that the evidence was sufficient to support the appellant's conviction, we also conclude that the trial court did not err when it failed to grant the motion for judgment of acquittal on grounds of entrapment.

-9-

At that time, the trial court <u>sua</u> <u>sponte</u> asked the jury to exit the courtroom. The trial judge pointed out that the appellant had been in court at least thirteen times and then ruled that counsel for the State could question the appellant about the manslaughter conviction, in effect determining the conviction admissible. Counsel for the State proceeded to question the appellant briefly about the existence of the manslaughter conviction once the jury returned to the courtroom.

On appeal, the appellant argues that "the trial court erred in allowing the evidence in contravention of Rule 403 of the Tennessee Rules of Evidence" and "such error cannot be said to be harmless beyond a reasonable doubt." The State counters that the trial court did not err in allowing the evidence of the prior conviction for purposes of impeachment. In the alternative, the State argues that even if the trial court erred by allowing the conviction to come into evidence, the error was harmless.

Pursuant to Rule 609 of the Tennessee Rules of Evidence, the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. First, if the witness to be impeached is the accused, the State must give notice prior to trial of its intent to utilize the conviction for impeachment purposes and upon request, the court must determine the admissibility of an eligible conviction by deciding whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3). The convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Also, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice. Tenn. R. Evid. 609(a)(3). A trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. <u>State v. Farmer</u>, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." <u>Long v. State</u>, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. <u>See</u> <u>Johnson v. State</u>, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

Furthermore, Tennessee Rule of Evidence 404(a), which addresses the admissibility of character evidence, provides:

(a) . . . Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except:
(1) . . . Evidence of a pertinent character trait offered by the accused or by the prosecution to rebut the same.

Tenn. R. Evid. 404(a)(1). The treatise <u>Tennessee Law of Evidence</u> elaborates on this exception to the general ban on character evidence of the accused, explaining that Rule 404(a)(1) embodies a very important exception to this general bar on the admissibility of character evidence of the accused. Neil P. Cohen, et al., <u>Tennessee Law of Evidence</u> § 4.04(4)(a) (4th ed. 2000). This exception allows

admission of character evidence when the accused "opens the door" by introducing evidence to prove a "pertinent" character trait, inevitably to demonstrate his or her own good character. Id. However, the accused is only allowed to introduce evidence of a "pertinent" character trait, meaning a character trait at issue in the trial. Id. § 4.04(4)(b). For example, the accused's character for honesty would be a pertinent character trait if he or she were charged with embezzlement. Id. Once the accused introduces evidence of his or her own good character, the state may also address the issue of the accused's character in order to prevent the trier of fact from receiving a one-sided view of the defendant's character. Id. § 4.04(4)(a). Furthermore, the defendant's proof under Rule 404(a)(1) is limited to reputation and opinion evidence only. Id. § 4.04(4)(c). However, under Rule 405(a), the state may introduce evidence of specific instances of conduct when cross-examining a defense witness in response to the presentation by the accused of this reputation or opinion character evidence. Id.

In this case, the appellant does not actually contend that the procedural requirements of the Tennessee Rule of Evidence 609 were unfulfilled. Although we acknowledge that the State failed to satisfy the actual notice requirement of Rule 609(a)(3), we find this issue waived by the appellant's failure to raise it in a motion for new trial. Tenn. R. App. P. 3(e). See also State v. Burl Lakins, No. 32, 1991 WL 84947, at *3 (Tenn. Crim. App. at Knoxville, May 24, 1991).[3] Thus, at this point our task is only to determine whether the trial court's decision to admit the evidence of the appellant's manslaughter conviction was proper under Tennessee Rule of Evidence 609 and the "open door" doctrine discussed above.

In beginning our analysis we note initially that generally, the decision as to whether to admit evidence in a trial is left to the discretion of the trial court. State v. Hutchinson, 898 S.W.2d 161, 172 (Tenn. 1994).

In the instant case, in response to a question posed by defense counsel during direct examination, the appellant testified that he had never been convicted of a drug offense. On cross-examination, the appellant claimed that he was "not used to" being cross-examined. Accordingly, through this testimony, we find that the appellant opened the door to the issue of pertinent character traits, i.e., that he was a good citizen and that his inconsistent answers on cross-examination were due to his unfamiliarity with the criminal justice system. The trial court ruled that the conviction could be used to impeach the appellant's testimony only after the appellant opened this door. The trial court considered the arguments of counsel on two separate occasions and weighed the probative

---

[3]Incidentally, this Court has held that the failure of the State to comply with the procedural requirements of Rule 609 was harmless error when the appellant was unprejudiced by the lack of notice. See, e.g., State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994); State v. Andre D. Kimbrough, No. M2001-02149-CCA-R3-CD, 2002 WL 31694496, at *5 (Tenn. Crim. App. at Nashville, Dec. 3, 2002); State v. Dean Byard, No. M2000-01410-CCA-R3-CD, 2001 WL 1502658, at *5 (Tenn. Crim. App. at Nashville, Nov. 27, 2001); State v. Antonio Kendrick, No. 02-C-01-9604-CR00121, 1997 WL 686266, at *3 (Tenn. Crim. App. at Jackson, Nov. 5, 1997) (perm. to appeal denied Jul. 13, 1998); State v. James Edward French, No. 03C01-9503-CR-00096, 1996 WL 138289, at *7 (Tenn. Crim. App. at Knoxville, Mar. 28, 1996) (perm. to appeal denied Oct. 28, 1996); Burl Lakins, 1991 WL 84947, at *3.

value and prejudicial impact of the conviction. Under these circumstances, we cannot conclude that the trial court abused its discretion. This issue is without merit.

Failure to Consider Mitigating Factors

The appellant challenges the trial court's failure to consider certain mitigating factors which he alleged were appropriate in determining the appellant's sentence. Specifically, the appellant argues that the trial court's failure to consider these mitigating factors "constitutes error and the appellant's sentence should be modified accordingly." The State argues that the trial court considered the mitigating factors and found that they did not apply.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Turning more specifically to the facts of this case, the defendant was convicted of conspiracy to possess with intent to deliver three hundred (300) grams or more of a substance containing cocaine. Since this is an A felony, the starting point for sentencing determinations is the middle of the range. See Tenn. Code Ann. § 40-35-210(c). It is undisputed that the appellant was a Range I offender; thus, twenty years is the mid-point against which the trial court must balance any mitigating and enhancement factors.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

The appellant argues that the trial court should have considered the following mitigating factors enumerated in Tennessee Code Annotated section 40-35-113: (1) the criminal conduct of the appellant neither caused nor threatened serious bodily injury; (2) substantial grounds existed tending to excuse or justify the appellant's criminal conduct, though failing to establish a defense; (3) the

appellant played a minor role in the commission of the offense; (4) the appellant was motivated by a desire to provide necessities for his family or himself; and (5) the appellant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct.

In imposing the appellant's sentence on the charge of conspiracy to possess with intent to deliver three hundred (300) grams or more of a substance containing cocaine, the trial court found that the only enhancement factor to apply was Tennessee Code Annotated section 40-35-114(13) (2000),[4] as there was "no question that . . . [the appellant] was on bond for an offense at the time this offense was committed." The trial court sentenced the appellant to a presumptive sentence of twenty years for the charge of conspiracy to possess with intent to deliver three hundred (300) grams or more of a substance containing cocaine and enhanced that sentence to twenty-one years after applying the applicable enhancement factor. The trial court stated that it looked at all of the mitigating factors presented by the appellant and found they did not apply.

The appellant now claims that the trial court erroneously failed to consider the following mitigating factors: (1) the criminal conduct of the appellant neither caused nor threatened serious bodily injury; (2) substantial grounds existed tending to excuse or justify the appellant's criminal conduct, though failing to establish a defense; (3) the appellant played a minor role in the commission of the offense; (4) the appellant was motivated by a desire to provide necessities for his family or himself; and (5) the appellant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. Tenn. Code Ann. § 40-35-113.

In our view, these factors were not shown by the appellant to be applicable. The facts do not suggest that the appellant played a minor role in the commission of the offense. See Tenn. Code Ann. § 40-35-113(4). He was the one who set up the deal with Detective Watson and brought the money to the McDonald's Restaurant to complete the transaction. The appellant was the only person who conversed directly with Detective Watson about the drug transaction. The appellant admitted that he freely got involved in the drug deal to pay back a debt to his boss, Mr. Riggsbee. The appellant claims that he was motivated by a desire to provide necessities for himself and that substantial grounds existed tending to excuse or justify his criminal conduct; he asserted that he became involved in the drug deal in order to repay Mr. Riggsbee for the money he borrowed for legal fees and that he was scared of Mr. Riggsbee. See Tenn. Code Ann. §§ 40-35-113(3) & -113(7). However, the appellant admitted that he voluntarily became involved in the transaction. The appellant also claims that he committed the offense under the unusual circumstances of entrapment, but we have determined that the trial court properly denied the motion for judgment of acquittal

---

[4] 2002 Tennessee Public Acts, Chapter 849, section 2(c), which became effective after the appellant's trial in this matter added subsection (1) to Tennessee Code Annotated section 40-35-114, relating to acts of terrorism, and redesignated former subsections (1) to (22) as (2) to (23). Therefore, the appellants complaint as to the trial court's application of enhancement factor (13) corresponds to the redesignated subsection of (14). However, because the application of the enhancement factor in this case occurred prior to the addition of the new subsection (1), we will refer to the enhancement factor by its old designation.

-13-

based on entrapment, because the evidence did not substantiate such a claim. See Tenn. Code Ann. § 40-35-113(11). Finally, the appellant claims that his criminal conduct neither threatened nor caused serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). While we agree that the appellant's conduct did not cause serious bodily injury and probably did not threaten bodily injury, we find this mitigating factor would be entitled to only marginal consideration. See Tenn. Code Ann. § 40-35-113(1). Thus, the appellant's argument that trial court's refusal to mitigate the appellant's sentence was error is unpersuasive. We conclude that the imposition of a twenty-one year sentence by the trial court was proper in this instance.[5]

## Failure to Consider Alternative Sentencing

Finally, without argument or citation to the record, the appellant argues that "he is a favorable candidate for alternative sentencing to a Community Corrections program" and that "the trial judge failed to consider alternative sentencing."[6] The appellant was convicted of conspiracy to possess with the intent to deliver three hundred (300) grams or more of a substance containing cocaine, which is a Class A felony. The appellant is not presumed eligible for alternative sentencing because he was convicted of a Class A felony, see Tenn. Code Ann. § 40-35-102(6), and furthermore has waived this issue for failure to include citations to the record or argument pursuant to Tennessee Court of Criminal Appeals Rule 10(b).

## Conclusion

After a thorough review of the record before this court, we conclude that there is no reversible error and accordingly, the judgment of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE

---

[5]Although the presentence report does not appear in the record on appeal, we note that the mitigating factors relied on by the appellant relate primarily to the present offense rather than prior offenses or information that would normally be included in a presentence report. Therefore, we conclude that the absence of the presentence report in the record is irrelevant to our review of this issue.

[6]The appellant did cite and quote in its entirety, Tennessee Code Annotated section 40-36-106, the statute outlining the procedure for awarding alternative sentencing to an otherwise eligible defendant.