**STATE of Tennessee, Petitioner,**

v.

**Charles Hasque BISHOP, alias Charles "Brownie" Bishop, Respondent.**

Supreme Court of Tennessee.

April 2, 1973.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for petitioner.

Harry C. Bowyer, Kingsport, for respondent.

## OPINION

DYER, Chief Justice.

This case comes to this Court by the grant of the writ of certiorari to the Court of Criminal Appeals, raising the issue of whether respondent was denied his constitutional right to a speedy trial under the facts presented.

The respondent, hereinafter referred to as the defendant, was convicted in the Criminal Court of Sullivan County, on February 22, 1971, of third degree burglary and sentenced to imprisonment in the Penitentiary for not less than three nor more than eight years. The Court of Criminal Appeals reversed the judgment and dismissed the case after finding the defendant was unconstitutionally deprived of his seasonably asserted right to a speedy trial.

The defendant and another were charged with third degree burglary in an indictment returned January 27, 1969. The defendant alone was charged with this offense and a second indictment returned March 3, 1969, this latter indictment being the basis of this conviction. The burglary was allegedly committed on November 18, 1968. Defendant was arrested January 28, 1969, by state authorities and was released on bond.

The defendant had apparently been arrested by Federal authorities in July, 1968, convicted in December, 1968, and released pending the hearing on sentencing. In February, 1969, the defendant was sen-

tenced in Federal District Court in Greeneville, Tennessee, and transferred to the Federal Penitentiary in Atlanta, Georgia. The same minute entry recording the indictment of March 3, 1969, by the Sullivan County Grand Jury shows that the court entered an order continuing the case "due to the fact that the defendant is in Federal custody."

On July 31, 1969, the defendant filed a petition in the Sullivan County Criminal Court, demanding a speedy trial of any and all criminal cases pending against him in that court or dismissal of the same, asserting his constitutional rights in the premises, stating that the Federal Government had certified its willingness to deliver him to the State of Tennessee for trial, and asking that the State bear all the expenses involved.

The opinion of the Court of Criminal Appeals summarized the relevant information in the record as follows:

Without burdening this opinion with a detailed recital of all the intervening events, suffice it to say that this record affirmatively shows: (1) the federal authorities at all times were agreeable to returning Bishop to Sullivan County for trial provided the State would advance the costs incident to making him available for and during the trial and his return to Atlanta; (2) the State of Tennessee declined to advance funds for that purpose—upon the ground that none had been appropriated or budgeted for such contingencies; (3) the Federal Government later relented and agreed to cooperate without advance payment of expenses in such cases "upon Writs of Habeas Corpus Ad Prosequendum filed in State Courts and approved by the Chief U. S. Marshall in Washington, D. C., and the Warden of the respective Federal Penitentiary." [and such a writ was applied for in and granted by the Sullivan County Criminal Court]; and (4) Bishop was returned to Sullivan County on January 7, 1971, and was brought to trial on February 22, 1971 . . . .

On January 13, 1971, the trial court conducted a hearing on defendant's original petition for a speedy trial or dismissal, and the evidence presented showed that the District Attorney General made a good faith effort to have the defendant returned for trial, but the State of Tennessee did not make the funds available for this purpose. The trial court found no violation of defendant's right to a speedy trial. A similar motion presented at the trial February 22, 1971, was denied.

The defendant's assignments of error regarding the weight of the evidence and the contents of the jury argument of the District Attorney General were properly found to be without merit by the trial judge and the Court of Criminal Appeals. The assignment of error contending the defendant was denied a speedy trial was sustained by the Court of Criminal Appeals and the State, by its assignments of error, suggested that the opinion (1) required more of the State than could be expected at the time which the case arose, and (2) it did not require petitioner to be expected to show prejudice as a result of the delay.

The right to a speedy trial arises under the Sixth Amendment to the Constitution of the United States made applicable to the State by the Fourteenth Amendment in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and Article 1, § 9 of the Constitution of Tennessee, as well as T.C.A. § 40–2001.

In a very recent case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court dealt at length with this difficult problem of determining when a defendant has been denied a speedy trial. The problem is made more difficult by the fact that when a court determines a defendant has been denied a constitutionally required speedy trial, the only relief the court can give is to dismiss what otherwise may be valid criminal charges.

In Barker v. Wingo, *supra,* the court accepted a "balancing test" in which

the conduct of both the prosecution and defendant are weighed, which test of necessity compels the court to approach speedy trial cases on an ad hoc basis. In the *Barker* case the court discussed four specific factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted a claim to his right, and (4) whether defendant was prejudiced by the delay.

In the case sub judice the delay was a little over two years. The State suggested a time period of delay be computed from the time defendant, by petition, demanded a speedy trial in July, 1969, rather than from the time of his arrest and arraignment. A number of jurisdictions have adopted such a rule. This rule is referred to in Barker v. Wingo, *supra*, as the "demand rule" or the "demand waiver doctrine," which, in effect, holds without a demand for a speedy trial by the defendant there is a waiver of this right. Since the defendant is under no duty to bring himself to trial, this duty resting on the State, we think the better rule is to consider as a factor the full time of the delay, and whether the defendant has made a demand for a speedy trial be considered as a separate factor. The absence of a demand for a speedy trial does not amount to a waiver. See Barker v. Wingo, *supra*.

On the fact of the length of the delay, it is pertinent to consider that during this time the defendant was imprisoned, and while in prison he was in a difficult position to prepare any defense to the charges. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627; Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). While the length of delay of two years under the circumstances of defendant being in prison during that time is a factor supporting a claim of lack of a speedy trial, we do not think this fact alone will support a finding that defendant has been denied his constitutional right to a speedy trial.

The reason for the delay is that the Federal authorities would not deliver defendant to Tennessee for trial without payment of expenses necessary for such delivery. The State of Tennessee had no provisions for such payments. When the defendant, as a Federal prisoner, filed his petition on July 31, 1969, requesting a speedy trial on the indictments pending against him in Sullivan County, the State of Tennessee had a duty to make a good faith effort to bring the defendant before the court for trial. Smith v. Hooey, *supra*; Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). The lack of financial resources for this purpose on the part of the State of Tennessee is not a legally justifiable reason to deny defendant his constitutional right to a speedy trial.

We should note here the District Attorney General made a diligent, good faith effort to provide the defendant with a speedy trial and the reasons for the delay are not attributable to him. The duty is not, however, his alone, but is a duty imposed on the State through all agencies and departments affecting the administration of justice. This is noted in Dickey v. Florida, *supra,* as follows:

> If the defendant does not cause the delay of his prosecution, the responsibility for it will almost always rest with one or another governmental authority . . . . [T]he public officials responsible for delay may not even be associated with law enforcement agencies or the courts. Delay, for example, may spring from a refusal by other branches of government to provide these agencies and the judiciary with the resources necessary for speedy trials. 398 U.S. at 51, 90 S.Ct. at 1575.

On the fact of whether the defendant asserted his right to a speedy trial, it should be noted that the failure to demand a speedy trial is not a waiver of the right, but is one of the factors to be considered in the ultimate decision; but, on the other

hand, a timely demand by a defendant for a speedy trial is a factor to be given "strong evidentiary weight," in support of a claim defendant has been denied his right to a speedy trial. Barker v. Wingo, *supra.* In the case sub judice defendant timely asserted his right to a speedy trial.

■ The fourth factor—prejudice—is viewed in light of the interest of the defendant which the right of a speedy trial is designed to protect. Smith v. Hooey, *supra,* lists three interests as (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit the possibilities that long delay impairs the ability of the accused to defend himself.

■ In this difficult task of balancing these factors we first consider the case for the defendant.

First, the defendant did timely assert his right to a speedy trial, a fact to be given strong evidentiary weight in support of his claim he has been denied his right to a speedy trial. Secondly, defendant, at the time of his arrest in January, 1969, employed Mr. Sid Gilreath as his counsel, who represented him at the time of the preliminary hearing and was to represent him upon the trial in the Criminal Court. Mr. Gilreath died in December, 1969, and defendant lost the benefit of counsel who had been on the case from the beginning. Also, defendant being in prison was unable to obtain other counsel until he was returned to Sullivan County for trial in February, 1971.

The counter-balancing factors in favor of the State are: the total delay of a little over two years is not per se extreme and is not such a length of delay that from this fact alone we would presume prejudice. There is no showing any of defendant's witnesses died or became otherwise unavailable during the course of the delay. The defendant prior to trial did obtain counsel other than Mr. Gilreath and there

is nothing in the record to indicate counsel trying the case was hindered in the trial of the case by not having been employed at an earlier date. Also, under the factors set out in Smith v. Hooey, *supra,* the (1) delay produced no incarceration and (2) anxiety accompanying public accusation, if any, was at a minimum since defendant was already serving time under a valid conviction, and (3) the record does not reflect the delay impaired defendant's ability to defend himself.

■ There is another element we think should be considered in the judgment of whether defendant was denied the right to a speedy trial, which, even if not considered a factor bearing on the final judgment to be made, it is an element that can be used in judging the other factors. This element is the strength of the State's case as to guilt. On this we do not have reference as to whether the evidence supports the verdict, but upon evidence that does support the verdict just how strong is the State's case. In the case at bar, the State made out a case that speaks strongly of guilt. Such being the case this element applies to the case at bar in this manner. The defendant as a result of the delay did lose the services of counsel he had employed when first charged, who it would be presumed was in a better position to defend defendant than counsel coming into the case at a later date. In view of the fact the evidence strongly indicates guilt, this fact of loss of counsel first employed diminishes in importance.

In reviewing the factors in this case as to whether defendant has been denied a speedy trial the only factor favoring the defendant is the fact defendant especially requested a speedy trial. While this is an important factor, it is not such a factor as will per se support a finding the defendant has been denied a speedy trial.

Balancing these factors, we do not think the defendant has been denied his constitutional right to a speedy trial.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court affirmed.

CHATTIN, HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.