# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 5, 2014 Session

## STATE OF TENNESSEE v. MARLO DAVIS

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 0701813    W. Mark Ward, Judge**

---

**No. W2011-01548-SC-R11-CD – Filed June 3, 2015**

---

Sharon G. Lee, C.J., concurring.

I concur in the Court's opinion; however, I write separately to express my concerns about the delay in the trial of this case and the evidentiary problems caused by the delay. Quincy Jones was shot to death on November 9, 2006. The Defendant was arrested on November 13, 2006, and a preliminary hearing was held on January 17, 2007. At the hearing, Jarcquise Spencer testified about what he saw at the time of the murder, including his recollection of seeing the Defendant pull a gun, point it at the victim, and shoot him.

A Shelby County grand jury indicted the Defendant on March 8, 2007, and he was arraigned twelve days later. Defense counsel filed motions, including those for discovery, witness statements, impeaching statements, and exculpatory information. Then, the case languished in Shelby County Criminal Court, Division III for over three years. On August 25, 2010, nearly four years after the murder and the Defendant's arrest, the trial judge recused himself. The case had been reset thirty-one times, but never tried.[1]

The case was transferred to Judge W. Mark Ward, Shelby County Criminal Court, Division IX. Judge Ward got the case back on track. The case was tried in April 2011, and sentencing was completed on May 19, 2011.[2] But when the case went to trial, Spencer did not testify as to what he had seen the day of the crime. He claimed to have no recollection of giving a statement to the police, testifying at the preliminary hearing,

---

[1] This information was obtained from handwritten notes on the case jacket.

[2] In all, the case was in Division IX for 267 days, as compared to the 1,266 days it spent idling in Division III between arraignment and recusal.

or the events surrounding the murder. Rather, he claimed only to remember seeing the victim lying in the driveway and getting his grandmother a towel. This testimony stood in stark contrast to Spencer's statement to police and his preliminary hearing testimony, both given soon after the murder. Thus arose the thorny evidentiary issue of the admission of his preliminary hearing testimony and his statement to police.

This case illustrates the danger of allowing a case to lay dormant while the wheels of justice grind to a halt. With the passage of time, memories fade and witnesses become intimidated, move, pass away, or simply want to forget the events they witnessed. Spencer was a ten-year-old child when the crime occurred and was not hesitant to testify. By the time of trial, he was fifteen years old and, for whatever reason, could not or would not recall the events that he had witnessed. Perhaps he was afraid to become involved, or perhaps he genuinely suffered memory loss. A delay of five years, a long time in the life of a child, serves no valid interest.

Timely adjudication of criminal charges is a right guaranteed by the United States Constitution and is a foundational principle of our criminal justice system. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.[3]

Trial judges have an obligation to manage their dockets in a timely manner. Tenn. Sup. Ct. R. 10, RJC 2.5. Defense lawyers and prosecutors have an ethical obligation to make reasonable efforts to expedite litigation. Tenn. Sup. Ct. R. 8, RPC 3.2. Unlike many other states, Tennessee has not adopted time standards for the disposition of criminal cases.[4] Model standards adopted by the NCSC provide that 75% of overall

---

[3] Despite being firmly rooted, this right to a speedy trial does not make every delay violative of an accused person's constitutional rights. Delays in a trial may be permissible and are examined by courts on a case-by-case basis. *Solem v. Helm*, 463 U.S. 277, 294 (1983); *see also State v. Bishop*, 493 S.W.2d 81, 83-84 (Tenn. 1973) (adopting the four-part balancing test from *Barker v. Wingo*, 407 U.S. 514, 530-34 (1972), for analyzing whether a criminal defendant's Sixth Amendment right to a speedy trial has been violated). Although "the failure to demand a speedy trial is not a waiver of the right," *Bishop*, 493 S.W.2d at 84, in this case, there is no indication that the Defendant alleged a violation of his right to a speedy trial at the trial court, and the Defendant did not raise this issue on appeal. The record does not contain an explanation as to the cause of the delays or who requested the many continuances.

[4] The National Center for State Courts ("NCSC") is an organization specializing in the administration of state courts. NCSC reports that at least thirty-nine states and the District of Columbia have time standards for felony cases. Richard Van Duizend et al., National Center for State Courts, *Model Time Standards for State Trial Courts* 5 (2011), http://ncsc.contentdm.oclc.org/cdm/ref/collection/ctadmin/id/1836 [perma.cc/2D3W-3WVP]. Time standards are important in that they: 1) "provid[e] goals for judges and other key participants in the court process to meet in managing caseloads," 2) "provide a yardstick for measuring court performance and management effectiveness," 3) "serv[e] as benchmarks for determining whether the pace of court proceedings is acceptable," 4) "provide a starting point for developing practices and procedures to meet the goals they set forth," and

felony cases should be decided within 90 days, 90% within 180 days, and 98% within 365 days. Duizend, *supra*, at 3.

Timely resolution of criminal cases serves several purposes. First, it protects the rights of accused persons to a speedy trial. Second, it demonstrates to the public that our system of justice works as intended. Citizens lose respect for a court system that does not, without adequate explanation or reason, timely dispose of cases. Third, defendants, victims, witnesses, families, and the community need the closure of criminal proceedings to begin to heal from the detrimental effects of violent crime. Defendants who are found guilty need to begin serving their sentences and working toward rehabilitation. Defendants who are found not guilty need to get on with their lives. Finally, timely disposition allows for more effective use of our criminal justice resources, including time spent in court on repeated resets of cases and the costs of holding inmates in pretrial detention. For all of these reasons, the timely resolution of criminal cases is essential to the pursuit of justice.

_____
SHARON G. LEE, CHIEF JUSTICE

---

5) positively affect "the use of available resources and the level of resource needs for judges, prosecutors, public defenders, law enforcement and jail personnel, and administrative support personnel." *Id.* at 35.