FILED
10/16/2025
Clerk of the
Appellate Courts

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE
### September 23, 2025 Session

### STATE OF TENNESSEE v. TRACE LEE MASON

**Appeal from the Criminal Court for Polk County**
**No. 22-CR-084      Sandra Donaghy, Judge**

_____

### No. E2024-00843-CCA-R3-CD

_____

The State appeals the trial court's order granting the defendant's motion to dismiss the five-count indictment against him on denial of speedy trial grounds. Following a thorough review of the record, the briefs, and oral arguments of the parties, we reverse the trial court's grant of the defendant's motion to dismiss, reinstate the indictments against the defendant, and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and MATTHEW J. WILSON, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Courtney Nicole Orr, Deputy Attorney General; Garrett D. Ward, Senior Assistant Attorney General; Stephen M. Hatchett, District Attorney General; and Aaron J. Chaplin and April D. Romeo, Assistant District Attorneys General, for the appellant, State of Tennessee.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Franklin, Tennessee (on appeal); and Larry Wright, Assistant Public Defender, Cleveland, Tennessee (at hearings), for the appellee, Trace Mason.

## OPINION

### *Facts and Procedural History*

On May 3, 2022, the Polk County General Sessions Court issued an arrest warrant for the defendant for especially aggravated kidnapping and aggravated rape. The affidavit

of complaint accompanying the arrest warrant alleged that the defendant had kept Lisa Ledwell from leaving his residence by using force and threats of killing Ms. Ledwell and her fourteen-year-old daughter.  Ms. Ledwell reported to law enforcement that for a period of a week, the defendant "st[r]uck her repeatedly by kicking her and hitting her all over her body and striking her with a hammer."  Ms. Ledwell further reported that the defendant "used force to rape her" the morning of May 2.  When Ms. Ledwell reported the events, the detectives observed that she had signs of injury "on multiple places on her body including bruising around both eyes, bruising on both arms and legs, abrasions on her head, chest and legs, and complaints of trouble breathing from internal injuries."  Subsequent examination at the hospital revealed that Ms. Ledwell had a ruptured spleen, multiple broken ribs, and possibly a lung injury.  Polk County law enforcement executed the arrest warrant on May 5, 2022.

A preliminary hearing was held on May 18, 2022, after which the case was bound over to the grand jury, and the defendant's bond was set at $310,000.  On September 12, 2022, the grand jury returned a five-count indictment against the defendant, charging him with especially aggravated kidnapping, aggravated rape, and three counts of aggravated assault.  The following day, the Polk County Criminal Court issued a bench warrant for the defendant, which was executed on September 14, 2022.

Trial was initially set for September 28, 2023.  Three days before trial, the State made an oral motion for a continuance because it was having trouble reaching the victim and could not adequately prepare for trial without speaking with her.  The court gave the State until the 27th, the day before trial, to try to find the victim.  At a hearing on the 27th, as well as in a written motion filed that same date, the State detailed that it had been in contact with the victim the previous evening and that the victim indicated she would be present for trial on the 28th.  The victim explained to the State that she "had disappeared for a length of time" and "ha[d] been hiding out in Georgia because of pending warrants out of Polk County General Sessions Court for misdemeanor matters for several months[.]"  The State pointed out that the victim also failed to appear at her general sessions court date on August 2, 2023, and had not checked into the "rehab center" she was supposed to attend.  The State relayed that it had tried to get in contact with the victim the morning of the 27th but had been unsuccessful and that as of 4:20 p.m. on September 27, the State had not been able to reach her.  The State asserted that it could not proceed to trial until it consulted with the victim and requested a continuance on that basis.

The defendant did not object to the continuance but requested, through counsel, that the trial court release him on his own recognizance.  The court granted the State's request for a continuance, reduced the defendant's bond to $100,000, and set a new trial date for January 25, 2024, with a backup trial date of May 16, 2024.

On September 29, 2023, the State moved for a material witness bond to secure the victim's appearance for trial. In the affidavit supporting the motion, the State reiterated many of the facts discussed during the September 27 hearing, indicating that the victim is "refusing to participate in the prosecution because she has pending misdemeanor warrants out of Polk County General Sessions Court." The State recited that the victim had been served with a subpoena for trial in June 2023 and then "disappeared" and "ha[d] been willfully concealing herself" since August. The victim did not appear for trial on September 28, but the victim's daughter appeared for trial and told the State that she had been in contact with the victim and that the victim told her that "she was not going to come to [c]ourt because of her pending warrants."

The trial court issued a material witness warrant for the victim, and she was subsequently found and arrested on unrelated charges. The trial court entered an order on November 13, 2023, releasing the victim "on her own recognizance" because she had been "accepted into drug court for the 10th Judicial District on unrelated criminal charges of her own." The victim was additionally required to contact the district attorney general's office on a weekly basis until the final disposition of the defendant's case as a condition of her release. At a hearing on December 18, 2023, related to "review[ing] the physical evidence," the State reported that "the victim has contacted the State every week" and has been "participating in drug court."

On January 22, 2024, the trial court conducted a status hearing prior to the trial date later in the week. At the hearing, the court inquired if the State was prepared to go forward, and the State informed the court that the victim had "taken off and disappeared again." The State explained that the victim had last reported to the district attorney's office on January 9 and last reported to drug court on the 11th. The victim did not report to drug court the following week, and the victim's daughter informed the drug court that "she did not know where [the victim] was."

The defendant asked that the State *nolle prosequi* the case or for the trial court to "dismiss this case for failure to prosecute, if they're not going to proceed." After some discussion, the court ordered the defendant to file a written motion for speedy trial because it "just d[id]n't see it in [the file]," and for the State to respond. The court said it would address the issue at a status hearing on May 13. The court reduced the defendant's bond to $1,000 and required the defendant to wear a GPS ankle monitor at his expense. The court granted the defendant the "extraordinary relief" of permission to cross the Tennessee-Georgia state line for work in order to pay his expenses. The defendant made bond and was released from custody on January 23, 2024.

On March 22, 2024, the defendant filed a motion to dismiss due to the denial of his right to a speedy trial. In his motion, the defendant recounted the history of the case and

argued that all four factors under *Barker v. Wingo*, 407 U.S. 514 (1972), were met. The defendant asserted that the first factor was established because it would have been twenty-four months since his arrest by the time of the May 2024 hearing, with twenty and a half of those months in incarceration. Moreover, "[h]is freedom is still being repressed as he is currently on bond under condition of GPS monitoring." The defendant acknowledged that the second factor established that the reason for the delay was the unwillingness of the victim to appear for trial, but he asserted that the "responsibility . . . rested with the State" because the "State had their witness in custody at the Polk County Jail after being arrested . . . [and] elected to release her." The defendant argued that the third factor was established because he had asserted his right to a speedy trial on September 25, 2023, and January 22, 2024.

With regard to the fourth factor, prejudice, the defendant argued that: (1) His pretrial incarceration was oppressive because he was in custody for over twenty months with no access to a secure outdoor area and "little or no recreational rehabilitative programs available to help alleviate boredom and enforced idleness"; (2) His previously-diagnosed Post-Traumatic Stress Disorder "resulted in increased levels of the anxiety and depression [more than] other inmates usually experience while incarcerated"; and (3) His defense was impaired because he had subpoenaed and had available a witness at the two prior trial settings "whose testimony would have [been] used to . . . impeach the State's victim/witness as to parts of her expected testimony" but was now unable to "locate where this witness is living."

The State filed a response to the motion on May 13, 2024, the same day as the status hearing. The State agreed that the delay was approaching two years but intimated that the delay was not unreasonable because the case involved "medical records and TBI expert witnesses and reports[,] . . . [and] numerous witnesses." Regarding the reason for the delay, the State maintained that the delay was not due to "its own 'negligence or bureaucratic indifference.'" The State asserted that, on the contrary, the victim was released on condition that she was monitored by the drug court and regularly reported to the district attorney's office, and "the State made every effort to remain in contact with the victim." The State conceded that the defendant made a demand for a speedy trial in September 2023 when the victim failed to appear for trial. With regard to prejudice, the State asserted that the defendant had not shown how his custody was "unusual or egregious" and "[t]here is no evidence or prior notification of any evidence that [the] [d]efendant would not be able to establish."

At the May 13 hearing, the State announced that it intended to *nolle prosequi* the case "because [it] cannot get the victim here. There are warrants out for her, and we've just been unable to get – we have – we did try again last week to get in touch with her. And she has failed to respond[.]" The defendant opposed the *nolle prosequi* and argued it

- 4 -

was an attempt by the State to keep the trial court from hearing his motion to dismiss for violation of his right to a speedy trial. The defendant asserted that even though he was now out of custody, he was "still basically not free" due to the ankle monitor and weekly reporting requirement.

The trial court recounted the case history, beginning with the case originally being set for trial in September 2023. The court initially observed that the defendant waived a previously-filed motion for speedy trial until after the September trial date was missed. The court recalled that it told the State at the first setting that the charges were "very serious" and that it needed to be prepared to go forward without the victim. The defendant renewed his motion for a speedy trial, but the court reset the trial date to January 2024, giving the State four months to locate the victim. In continuing to recount the procedural history, the court observed that in December 2023, it appeared that the case would proceed to trial as scheduled because the victim had been located and was contacting the State every week and participating in drug court. However, "[i]n January, the victim had fled," and the defendant moved to dismiss on speedy trial grounds. The court ordered both parties to file motions regarding the speedy trial violation claim for the court to address at the May 13, 2024, status hearing. The court observed that it reduced the defendant's bond with ankle monitoring as a condition of release and that "the State indicated that they were going to get a material witness warrant for the victim. And now, we are here today." After its recitation, the court observed that "these charges are so very serious[,] . . . [b]ut this victim has refused to cooperate." The court then summarily announced that "[t]hese charges will be dismissed." The court noted that the State "ha[d] made valiant efforts to try to prosecute this matter, but without the eye witness you can't go forward."

On May 24, 2024, the State filed a motion for the trial court to reconsider its grant of the defendant's motion to dismiss. The record on appeal does not include a transcript of a hearing on the motion or an order disposing of the motion. On June 18, 2025, the defendant filed a "motion to remove the 'Motion to Reconsider' as an improper inclusion in the [appellate] record." On June 25, 2025, this Court entered an order deferring judgment on the motion as "the issue concerning whether the motion to reconsider and attachments are properly includable in the appellate record is best addressed by a panel of this [C]ourt upon adjudication of the appeal."

*Analysis*

## I. Motion to Reconsider

As an initial matter, the defendant argues that the State's "Motion to Reconsider" and its attached exhibits were not properly included in, and should be stricken from, the appellate record because the trial court did not rule on the motion and the attachments were

not presented to the trial court in its adjudication of the motion to dismiss. The defendant filed a motion in this Court to the same effect, and this Court issued an order deferring a ruling on the motion until before a full panel of this Court at this time.

Legal question aside, the defendant misapprehends which materials in the appellate record were exhibits to the motion to reconsider. Throughout his argument on appeal and in his motion, the defendant indicates his belief that photographs of the victim's injuries, medical records, lab reports from TBI agents, and certified copies of the defendant's prior convictions only appear in the appellate record because they were attachments to the motion to reconsider. This is simply incorrect. The motion to reconsider clearly identifies its two exhibits (collectively Ex: 5) as being "Judge's notes from 09/25/23" and "Transcript of Motion hearing from 09/25/23." Exhibit 5 was cited in the State's brief one time and only during its factual recitation. It appears that all the other exhibits were part of the case file well before the indictments were dismissed.

Tennessee Rule of Appellate Procedure 24(a) provides that the record on appeal shall consist of, among other things, "copies, certified by the clerk of the trial court, of all papers filed in the trial court except as hereafter provided . . . [and] the original of any exhibits filed in the trial court[.]" The rule goes on to provide that the papers that should be excluded include subpoenas or summonses, discovery materials, jury lists, trial briefs, and court minutes. Tenn. R. App. P. 24(a). In our view, the exhibits consisting of photographs of the victim's injuries, medical records, lab reports from TBI agents, and certified copies of the defendant's prior convictions that were filed in the trial court while the case was in the trial court's jurisdiction fall within the plain language of this rule. The fact the trial court did not consider these exhibits "during its decision-making process to dismiss th[e] case" is of no consequence.

The defendant then takes the alternative argument that if the exhibits were properly filed and part of the trial court file, then they should be considered discovery and excluded under Rule 24(a). The State seemingly disagrees with that assessment. However, we need not resolve this dispute because we view such documents as "necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to th[e] issues that are the bases of appeal" as they are instructive on the timeline and complexity of the case and were not entered ex parte. *See* Tenn. R. App. P. 24(a)(5), (g).

Accordingly, we deny the defendant's motion to remove the State's "Motion to Reconsider" from the appellate record.

## II. Speedy Trial

Turning to the primary issue at hand, the State argues that the trial court erred in dismissing the charges against the defendant on denial of speedy trial grounds. The defendant responds that dismissal was proper. We agree with the State.

Criminal defendants are "entitled to a speedy trial" under both the United States and Tennessee Constitutions and Tennessee statutory authority. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-14-101; *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997). "These guarantees were designed 'to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished.'" *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005) (quoting *Utley*, 956 S.W.2d at 492). The right to a speedy trial arises when the defendant has been arrested or an indictment has been issued. *State v. Baker*, 614 S.W.2d 352, 353 (Tenn. 1981). If the defendant's right to a speedy trial is violated, the only remedy is dismissal of the charges against him. *Barker*, 407 U.S. at 522; *State v. Bishop*, 493 S.W.2d 81, 83 (Tenn. 1973).

To determine whether a defendant's constitutional right to a speedy trial has been violated, this Court balances the following four factors: "(1) the length of the delay; (2) the reason for the delay; (3) whether there was a demand for a speedy trial; and (4) the presence and extent of prejudice to the defendant." *State v. Moon*, 644 S.W.3d 72, 79 (Tenn. 2022) (citing *Barker*, 407 U.S. at 530). "[A] speedy trial violation claim is a mixed question of law and fact." *Id.* at 78. Appellate courts should give deference to the trial court's findings of fact unless the evidence preponderates against them. *Id.* However, the trial court's interpretation and application of the law to the facts is reviewed de novo. *Id.*

The trial court's oral dismissal of the indictment contains no reference to or analysis of the *Barker* factors. Nevertheless, given our review is de novo, we will embark on a review of the factors.

With regard to the first *Barker* factor, the length of the delay, we note that "a delay must approach one year to trigger an analysis of the remaining [three] factors." *State v. Berry*, 141 S.W.3d 549, 569 (Tenn. 2004) (internal quotation omitted). However, "the length of the delay alone will not support a finding of a speedy trial violation," *id.*, and courts take into account the complexity of the case in evaluating the reasonableness of the length of delay. *State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996).

Here, approximately twenty months passed between the defendant's arrest and when he was released on bond and another four months passed before the dismissal of the case. Although sufficient to trigger a speedy trial inquiry, we note that such length of time is not

particularly egregious viewed in light of our speedy trial jurisprudence. *See, e.g., Wood*, 924 S.W.2d at 342 (thirteen-year delay did not result in speedy trial violation); *State v. Morris*, 469 S.W.3d 577, 588 (Tenn. Crim. App. 2014) (over two-year delay did not result in speedy trial violation); *State v. Vickers*, 985 S.W.2d 1, 5-7 (Tenn. Crim. App. 1997) (finding no speedy trial violation from delay of three years and nine months); *State v. Jackson*, No. E2022-00298-CCA-R3-CD, 2023 WL 2924006, at *15 (Tenn Crim. App. Apr. 13, 2023) (seven-year delay did not result in speed trial violation), *perm. app. denied* (Tenn. Aug. 8, 2023); *State v. Patton*, No. M2018-01462-CCA-R3-CD, 2020 WL 1320718, at *13-*15 (Tenn. Crim. App. Mar. 19, 2020) (three-year delay did not result in speedy trial violation), *perm. app. denied* (Tenn. Aug. 7, 2020). Further, the case involved five felonies, medical records, and TBI experts and reports, making this a more complex case for purposes of evaluating the reasonableness of the delay. We weigh the first factor in the defendant's favor but with minimal weight.

The second *Barker* factor, the reason for the delay, usually falls into one of the following categories:

> (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant;
>
> (2) bureaucratic indifference or negligence;
>
> (3) necessary delay for the fair and effective prosecution of the case; and
>
> (4) delay agreed to or caused by the defendant.

*Wood*, 924 S.W.2d at 346-47. The *Wood* court categorized the types of delay further, stating:

> The first type, intentional delay, is weighed heavily against the State. The second type, negligent delay, is also weighed against the State although not as heavily as deliberate delay. The third type of delay is, by definition, justifiable and is not weighed against either party. The fourth type of delay, which is caused or acquiesced in by the defendant, is weighed against the defendant.

*Id.* at 347.

The defendant asserts that the cause for the delay was bureaucratic indifference or negligence because "[t]he State knew or ought to have been aware of the substantial risk that [the victim] would not appear for trial and yet afforded her every opportunity to be

released without adequate supervision." The State asserts that the delay was for the "fair and effective prosecution of the case." We agree with the State and determine that this factor does not weigh against either party. First, testing of the DNA evidence in the case was not completed until March 17, 2023, and delay for examination of a rape kit in a rape case is certainly necessary for the fair and effective prosecution of the case.[1] Thereafter, the case was timely set for trial and the subsequent delay was attributed to the State's inability to secure the appearance of the victim / material witness, Ms. Ledwell. However, a missing witness is a valid reason to justify a reasonable delay. *Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

The defendant asserts that the delay attributable to the missing victim was due to the State's negligence or indifference in asking that the victim be released on her own recognizance to misdemeanor supervision by the drug court. While aspects of the victim's behavior suggested that she could possibly be a disappearance risk, we cannot deem the State negligent or indifferent in suggesting that she be released into drug court where she was required to report to two different entities on a weekly basis until the disposition of the defendant's case. The defendant contrasts the supervision that was required of him when his bond was lowered to $1000 and he was able to be released with the lack of supervision required of Ms. Ledwell, the victim. What the defendant fails to acknowledge in his zealous argument, however, is that Ms. Ledwell is a victim/witness and not a person indicted by the grand jury for five serious felonies. This factor does not weigh in favor of either party.

Turning to the third *Barker* factor, as conceded by the State, the defendant asserted his right to a speedy trial, and thus, this factor weighs in favor of the defendant. We do observe, however, that the defendant acquiesced to all but eight months of the delay.[2]

Finally, we consider the prejudice to the defendant caused by the delay. When evaluating a delay of prosecution for prejudice, courts must remain aware that the speedy trial right is designed to: (1) prevent undue and oppressive pre-trial incarceration; (2) minimize anxiety and concern accompanying public accusation; and (3) limit the possibility that long delay will impair the defense. *Bishop*, 493 S.W.2d at 85. Our supreme court has said that the most important factor in determining prejudice is whether the defendant's ability to prepare a defense was impaired. *Berry*, 141 S.W.3d at 568; *Baker*, 614 S.W.2d at 356.

---

[1] As addressed in Section I above, the defendant asserts that the TBI reports, medical records, etc. should not be considered as part of the appellate record. However, as we have determined, such exhibits are properly included.

[2] The record indicates that the defendant raised a speedy trial claim at an early stage of the proceeding but withdrew or waived it when the September 2023 trial date was set and did not reassert his claim until that trial date fell through.

First, there is no proof that the defendant's pretrial incarceration was unduly oppressive.  Second, while the defendant alleged in his motion to dismiss that "[h]is P[T]SD resulted in increased levels of the anxiety and depression [more than] other inmates usually experience while incarcerated," there is nothing to substantiate this claim.  Regardless, as this Court has noted, pretrial "anxiety and concern are 'always present to some extent, and thus absent some unusual showing [are] not likely to be determinative in [a] defendant's favor.'"  *State v. Hernandez*, No. M2016-02511-CCA-R3-CD, 2019 WL 2150171, at *40 (Tenn. Crim. App. May 15, 2019) (quoting 5 - Wayne Lafave, Criminal Procedure, § 18.2(e) (4th ed. 2017) (footnotes omitted)).  There has not been some "unusual showing" related to anxiety experienced by the defendant.

Third, and most importantly, there is nothing in the record to support the defendant's claim that the delay impaired his ability to prepare a defense.  In his motion to dismiss, the defendant vaguely asserted that his defense was impaired because he had subpoenaed and had available a witness at the two prior trial settings "whose testimony would have [been] used to . . . impeach the State's victim/witness as to parts of her expected testimony" but was now unable to "locate where this witness is living."  The defendant offered no information about this alleged witness, the content of that witness's testimony, or how such testimony would impeach the victim's testimony.  It is also puzzling that this witness was consistently available for two trial settings and then became unable to be located.  The defendant's nebulous allegation concerning a witness is simply not enough to show that he suffered any true prejudice from the delay.

In the balancing analysis, the fourth factor is entitled to the greatest weight.  Accordingly, we conclude that the defendant was not deprived of his right to a speedy trial, and the trial court erred in dismissing the indictments.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we reverse the trial court's grant of the defendant's motion to dismiss, reinstate the indictments against the defendant, and remand to the trial court for further proceedings.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 10 -