IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2025 Session

## STATE OF TENNESSEE v. WILLIAM GOLDSBERRY, JR.

**Appeal from the Circuit Court for Henderson County**
**No. 96-305-2     Donald H. Allen, Judge**

_____

### No. W2025-00111-CCA-R3-CD
_____

CAMILLE R. MCMULLEN, J., dissenting.

I respectfully dissent from the majority's opinion on two grounds. First, although not addressed by the majority, I find the exceedingly late issuance of the November 19, 2024 violation of probation warrant to be problematic. A strong argument can be made that the November 19, 2024 warrant, which was issued more than twenty-two years after the Defendant's sentence expired on June 23, 2002, and decades after the new criminal offenses in Oklahoma and California were allegedly committed, would violate the Defendant's due process rights under the test for pre-accusatorial delay. Though perhaps not as strong, an argument can also be made that the trial court did not have jurisdiction over the November 19, 2024 violation of probation warrant, which alleged the Oklahoma and California offenses, because this second warrant was issued more than twenty-two years after the Defendant's probationary sentence expired on June 23, 2002. See Tenn. Code Ann. § 40-35-311(a)(1) (stating that "[w]henever it comes to the attention of the trial judge that a defendant who has been released upon suspension of sentence has been guilty of a breach of the laws of this state or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under the trial judge's hand: . . . (A) A warrant for the arrest of the defendant as in any other criminal case; or (B) For a technical violation brought by a probation officer, and subject to the discretion of the judge, a criminal summons."); see also State v. Moon, No. M2023-01192-CCA-R3-CD, 2025 WL 1672885, at *12 n.7 (Tenn. Crim. App. June 13, 2025) (citing Tenn. Code Ann. § 40-35-311(a) (reiterating that probation revocation proceedings "may only be commenced within the applicable probationary period"). Because the November 19, 2024 warrant was issued decades after the criminal offenses in Oklahoma and California and more than twenty-two years after the Defendant's sentence expired, this court could have concluded either that this warrant violated the Defendant's due process rights or that the trial court did not have jurisdiction over this matter.

- 1 -

Second, I respectfully disagree with the majority's conclusion that the Defendant's right to a speedy trial in probation revocation proceedings attached on October 30, 2024, when the July 20, 2001 violation of probation warrant was served. In Allen, the Tennessee Supreme Court held that "a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant . . . has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation'" Allen v. State, 505 S.W.2d 715, 719 (Tenn. 1974). The Allen court then concluded that the "two year, eight month delay" between the issuance of the probation violation warrant and the revocation hearing violated the defendant's right to a trial. Id. at 716-19.

A careful examination of these cases clarifies that Allen is controlling law when determining whether a speedy hearing was given in a probation revocation case while Utley is the prevailing law when determining whether a speedy trial was provided on the original criminal charges. Compare Allen, 505 S.W.2d at 719 (holding that "a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant in the instant case has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation'"); State v. Utley, 956 S.W.2d at 489, 491 (Tenn. 1997) (holding in the original prosecution on the charged offenses that "the issuance of an arrest warrant alone does not trigger a speedy trial analysis" and "the right to a speedy trial is not implicated until there is an arrest or a formal grand jury accusation"); see State v. Hutchings, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *6 (Tenn. Crim. App. June 16, 2009) (declining to extend Utley to probation revocation proceedings in the context of determining when a defendant's speedy trial right is triggered); see also State v. Berry, 141 S.W.3d 549, 568 (Tenn. 2004) (internal quotation marks and citation omitted) ("The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial." (emphasis added)).

Allen is not an exception to the rule in Utley. Instead, Allen is a recognition that probation revocation proceedings are commenced when the trial court issues the probation violation warrant because the warrant serves as the formal accusation. Allen, 505 S.W.2d at 716-19; see Hutchings, 2009 WL 1676057, at *6 (citing Tenn. Code Ann. § 40-35-311(a)). Accordingly, the issuance of the warrant, not the service of the warrant, is the "triggering mechanism" when determining whether a defendant's right to a speedy revocation hearing was violated. See Hutchings, 2009 WL 1676057, at *6.

Although the majority highlighted a few cases in which panels disagreed, the prevailing view in this court is that the right to a speedy trial attaches upon issuance of the warrant in probation revocation proceedings. See e.g., State v. McKee, No. W2012-00797-CCA-R3-CD, 2013 WL 12181710, at *2 (Tenn. Crim. App. Mar. 7, 2013); Hutchings, 2009 WL 1676057, at *6; State v. Meadows, No. W2006-02534-CCA-R3-CD, 2007 WL 1215050, at *2-3 (Tenn. Crim. App. Apr. 24, 2007); State v. Matkin, No. E2005-02701-CCA-R3-CD, 2007 WL 120048, at *5 (Tenn. Crim. App. Jan. 18, 2007); State v. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1-2 (Tenn. Crim. App. Dec. 27,

2005); State v. Wilson, No. M2000-01537-CCA-R3-CD, 2001 WL 523368, at *2 (Tenn. Crim. App. May 16, 2001); State v. Ralph, No. M1999-01635-CCA-R3-CD, 2000 WL 775592, at *1-2 (Tenn. Crim. App. June 16, 2000). Because a violation of probation warrant serves as the formal accusation in probation revocation proceedings, and no further action is required, the issuance of this warrant triggers a defendant's speedy trial right. See McKee, 2013 WL 12181710, at *2 ("Unlike the grand jury accusation component involved in criminal charges, probation revocation proceedings are commenced when the trial judge issues the warrant."); Hutchings, 2009 WL 1676057, at *6 ("Probation revocation proceedings are commenced when the trial judge issues the warrant; the warrant serves as the formal accusation." (emphasis added)); compare Tenn. Code Ann. 40-2-104 ("A prosecution is commenced, within the meaning of [limitations of prosecutions], by finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance . . . .") (emphasis added), and Tenn. R. Crim. P. 4, Advisory Comm'n Cmt ("The commission did not recommend two separate warrant forms, one for use where the accused had not yet been arrested, and the second to merely state the charge against one already under arrest, because it is more utilitarian to have only the one form. The command to arrest is obviously surplusage where the warrant is directed against one already in custody; but a warrant in such cases still serves as the official charging instrument, issued after a judicial finding of probable cause, and gives notice of the charge which must be answered."). As explained below, the delay between the issuance of the violation of probation warrant on July 20, 2001, and the December 19, 2024 revocation hearing violated the Defendant's right to a speedy revocation hearing, and the trial court erred by denying his motion to dismiss the July 20, 2001 and November 19, 2024 warrants. Thus, I would have reversed the judgment of the trial court and dismissed both warrants against the Defendant.

I believe that applying the test for the speedy trial right is far more appropriate than applying the due process test for pre-accusatorial delay, which is a significantly more rigorous test requiring the defendant to prove the State caused the delay to gain a tactical advantage over or to harass the defendant. Compare State v. Dykes, 803 S.W.2d 250, 256 (Tenn. Crim. App. 1990) ("Before an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused." (emphasis added)), with State v. Bishop, 493 S.W.2d 81, 83-84 (Tenn. 1973) (applying the Barker v. Wingo test, which required balancing the following four factors, to determine whether a defendant's speedy trial right had been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant because of the delay).

The following four factors must be weighed when determining whether a defendant's speedy trial right has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant because of the delay.  Barker v. Wingo, 407 U.S. 514, 530 (1972); Bishop, 493 S.W.2d at 84; see Blackwell v. State, 546 S.W.2d 828, 830 (Tenn. Crim. App. 1976) (applying the Barker factors when analyzing the delay of a probation revocation hearing).

Regarding the first factor, the length of the delay, the record shows the trial court issued the first violation of probation warrant on July 20, 2001, and the trial court conducted the revocation hearing on December 19, 2024, more than twenty-three years later.  Undoubtedly, this extraordinarily long delay is "presumptively prejudicial."  Barker, 407 U.S. at 530; Hutchings, 2009 WL 1676057, at *6.  Accordingly, the remaining three Barker factors must be considered.  See State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996) (recognizing that "the length of the delay is the triggering mechanism that will necessitate the consideration of the other three factors").

As to the second factor, the reason for the delay, we note that the Tennessee Supreme Court identified the following reasons for delay:  "(1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense."  Id. at 346-47 (footnotes omitted).  While the record does not suggest that the State intentionally caused this delay, there is proof showing that the more than twenty-three-year delay between the issuance of the warrant and the probation hearing was related to "bureaucratic indifference or negligence."  See id.; Hutchings, 2009 WL 1676057, at *7.  If the State had intended to promptly pursue its claim of a probation violation, it could have notified the Defendant of the issuance of the warrant shortly after May 23, 2001, when the Kern County Probation Department notified Tennessee probation officials that the Defendant's courtesy supervision had been terminated and reported the Defendant's new residential address.  In addition, the State could have placed a detainer on the Defendant on October 5, 2001, when he was in custody for his Oklahoma charges.  Either of these options would have resulted in a swifter probation revocation hearing.  However, the State failed to pursue either of these options and failed to provide a legitimate reason for the more than twenty-three-year delay.  Because this delay, stemming from bureaucratic indifference or neglect, was "not unavoidable"; this second factor also weighs against the State.  See Hutchings, 2009 WL 1676057, at *7; State v. Jackson, No. M2005-01374-CCA-R3-CD, 2006 WL 1896350, at *4 (Tenn. Crim. App. July 7, 2006).

I next consider the third factor, the defendant's assertion to his right to a speedy trial.  The record shows that the Defendant was unaware of the probation violation warrant until he was served with it on October 30, 2024.  See Wood, 924 S.W.2d at 351 n.13 ("[A]n accused who is unaware that charges are pending against him or her, as is often the case

where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right."). On December 17, 2024, less than two months after service of the warrant, the Defendant filed a motion to dismiss, alleging that his right to a speedy trial had been violated. Accordingly, the Defendant timely made a demand of his right to a speedy trial. This third factor similarly weighs against the State.

Finally, I must consider the fourth factor, the prejudice to the defendant. Initially, I recognize that there is no requirement that a defendant prove particularized prejudice. Although the prejudice factor has been identified as the most important of the four, "[t]he factors relevant to a speedy trial inquiry are interrelated and depend upon the particular circumstances of each case." State v. Simmons, 54 S.W.3d 755, 760 (Tenn. 2001); see Hutchings, 2009 WL 1676057, at *8 (recognizing that the court must consider "the totality of the factors and each and every circumstance relating to those factors in determining when the defendant has been denied his right to a speedy trial"). Significantly, the Tennessee Supreme Court has held that a defendant is not necessarily required to affirmatively prove particularized prejudice. Simmons, 54 S.W.3d at 760 (citing Doggett v. United States, 505 U.S. 647, 654-55 (1992); Wood, 924 S.W.2d at 348; Bishop, 493 S.W.2d at 85). Historically, Tennessee courts have provided relief under speedy trial analysis in probation revocation proceedings where there was no express showing of prejudice. Allen, 505 S.W.2d at 719; Hutchings, 2009 WL 1676057, at *8-9 & n.6. In any case, prejudice to the defendant should be evaluated against the purposes underlying the speedy trial right: "(1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibilities that long delay will impair the defense." Simmons, 54 S.W.3d at 760 (citing Bishop, 493 S.W.2d at 85); see Doggett, 505 U.S. at 654.

Although proving prejudice is not required, the record here shows the Defendant did suffer some prejudice because this protracted delay limited his ability to defend himself. The risk of lost evidence or diminished memories seems particularly likely in the Defendant's case after a twenty-three year delay between the issuance of the warrant and his probation revocation hearing. It is well established that "the presumption that pretrial delay has prejudiced the accused intensifies over time." Doggett, 505 U.S. at 652. At a minimum, the State's more than twenty-three-year delay had the effect of "'compromis[ing] the reliability of [the probation revocation hearing] in ways that neither party can prove or, for that matter, identify.'" See State v. Picklesimer, No. M2003-03087-CCA-R3-CD, 2004 WL 2683743, at *5 (Tenn. Crim. App. Nov. 24, 2004) (quoting Doggett, 505 U.S. at 655).

In my view, consideration of the Barker factors overwhelmingly establishes that the Defendant was denied his right to a speedy revocation hearing due to the more than twenty-three-year delay between the issuance of the July 20, 2001 violation of probation warrant and the December 19, 2024 revocation hearing. If a defendant is denied the right to a speedy revocation hearing, the proper remedy is dismissal of the violation warrant. See

<u>Barker</u>, 407 U.S. at 522; <u>Bishop</u>, 493 S.W.2d at 83.  Given the egregious facts in this case, I would reverse the judgment of the trial court and dismiss both the June 20, 2001 and November 19, 2024 probation violation warrants.

<u>s/        Camille      R. McMullen</u>_____

CAMILLE R. MCMULLEN, JUDGE